Jan Charles **GRAY**, Appellant (Plaintiff),

v.

**NORWEST BANK WYOMING,
N.A.,** Appellee (Defendant).

No. 98–208.

Supreme Court of Wyoming.

Aug. 4, 1999.

Jerry A. Yaap of Bishop, Bishop & Yaap, Casper, Wyoming, Representing Appellant.

Bruce N. Willoughby of Brown, Drew, Massey & Sullivan, Casper, Wyoming, Representing Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and HILL, JJ.

GOLDEN, Justice.

This case presents the issue whether an easement by implication can be created by conduct contrary to an express agreement to discontinue use of a tunnel system beneath property. In a conveyance of part of its property to Peter W. Hacker, Appellee Norwest Bank agreed to close the tunnels at the property line but did not do so for some years. Appellant Jan Charles Gray subsequently purchased from Hacker and attempted to use the tunnels. After Norwest Bank closed the tunnels, Gray filed this action, claiming an implied easement to the tunnels. The district court granted summary judgment to Norwest Bank, and Gray appeals.

As a matter of law, an easement will not be implied where, at severance of unified ownership, the owner and the purchaser expressly agree to discontinue use of that property claimed as an easement. We affirm the order granting summary judgment.

## ISSUES

Gray presents these issues:

A. Did the trial court err in finding that there were no genuine issues of material fact, as a matter of law, and that a summary judgment was proper in favor of appellee (hereinafter referred to as "Norwest Bank") concerning whether the existence and usage of the tunnels created an implied easement. This issue needs to be considered in evaluating the action and inaction of Norwest Bank for more than four years in using the easement, allowing others to use it, and not sealing the tunnels. Norwest Bank asserts that the legal right to close the tunnels after the subsequent purchase by Appellant (hereinafter referred to as "Gray") is derived from a minor "conditional" provision, which they alleged created an abandonment, in a previous purchase and sale agreement, even though nothing was recorded, and during negotiations with Gray for other less onerous means of resolving the dispute.

B. Did the trial court err in finding that there were no genuine issues of material fact, as a matter of law, and that a summary judgment was proper for Norwest Bank regarding whether the easement was abandoned by the Norwest–Hacker purchase and sale agreement, to which Gray was not a party and which was never acted upon by Norwest Bank until after the property was sold to Gray. The Court should consider the alleged abandonment, which was a minor footnote to an unrecorded purchase and sale agreement and the subsequent negotiations seeking to define the "closing" of the tunnel and several less onerous alternatives, such as an access door or a division of the tunnel.

Norwest Bank rephrases the issues as:

A. Was the trial court correct in its decision that there were no genuine issues of fact as a matter of law as to the existence of an implied easement in the tunnels running under the parties' respective properties, as there was no testimony to contradict the unequivocal and unambiguous intention of the parties to abandon any easement to the tunnels, as expressed in the offer, acceptance and receipt executed by both appellee ("Norwest Bank") and the Hackers, Appellant's ("Gray") predecessors in interest, on October 2, 1992?

B. Was the trial court correct in granting summary judgment to Norwest Bank as a matter of law, for the reason there was no implied easement created in the tunnels at the time of conveyance by Norwest Bank to Hackers, because the intent of the parties at the time of the Norwest Bank conveyance to Hackers, to abandon any easement existing in the tunnels, was unequivocal and unambiguous?

## FACTS

Norwest Bank was the owner of real properties at 152 and 153 North Durbin Street, Casper, Wyoming. These properties, Lots 12, 13, and 14 of Block 11, Lots 1 and 2 of Block 12, and the West 40 feet of Lots 11 and 12 of Block 57, were known as the Norwest Bank Office Building and the Durbin Street Drive–Up. Norwest Bank also was, and continues to be, the owner of real property adjoining 152 North Durbin Street to the south. During the time that Norwest Bank owned all of these properties, it built an underground tunnel system connecting the properties. The tunnel system served the purpose of allowing travel between the properties and underneath North Durbin Street in order to access the drive-up banking facility and to connect utilities between the properties. The tunnel from the property at 152 North Durbin Street proceeds generally south, and the tunnel from the property at 153 North Durbin Street proceeds generally southwest underneath the street, and the tunnels from those two properties connect at a point on the property retained by Norwest Bank underneath its parking lot where they were connected also to underground access to the building located on Norwest Bank's parcel.

On October 2, 1992, Norwest Bank, as Seller, and Peter W. Hacker, as Purchaser, entered into an Offer, Acceptance and Receipt Specific Performance Contract for the purchase and sale of the said real properties at 152 and 153 North Durbin Street, and in that contract they agreed "Seller at Seller's expense agrees to close off tunnels at the property line of properties being purchased." On December 3, 1992, Norwest Bank conveyed to Peter W. Hacker and Sarah J. Hacker the real properties at 152 and 153 North Durbin Street, together with all improvements, and subject to reservations of record. Four years later, Gray acquired ownership of the real properties at 152 and 153 North Durbin Street from the Hackers. Gray had meetings with a representative of Norwest Bank, and wrote a letter to Norwest Bank to request and demand use of the subject tunnel system, but such use was rejected, and Norwest Bank closed off and denied Gray access to the tunnels beneath Norwest Bank's adjoining property. Gray filed suit, requesting that the Court declare he had an implied easement, and requesting damages for Norwest Bank's interference with that implied easement.

In his complaint, Gray contended that Norwest Bank continued to allow use of the tunnels after the sale; however, Norwest

Bank denies this allegation. Gray also contended that he informed Norwest Bank that he intended to actively seek a banking business as a tenant for the property and intended to utilize the tunnel system for that purpose, and, upon learning of this intent, Norwest Bank erected barriers within the tunnel system. Norwest Bank denied these allegations and moved for summary judgment on the basis that the contract provision requiring it to close off the tunnels proved it had no intent of creating an easement, and had abandoned any existing easement.

The district court granted summary judgment, agreeing that the contract provision did disprove any intent to create an easement and the contract provision proved that if an easement had existed, the express intent and agreement of the parties at the time of severance was to abandon any such easement and discontinue the use of the tunnels on the property required by the Hackers. This appeal followed.

## DISCUSSION

*Standard of Review*

Summary judgment is proper only when there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law. *Mountain Cement Co. v. Johnson,* 884 P.2d 30, 32 (Wyo.1994); W.R.C.P. 56(c). We review a summary judgment in the same light as the district court, using the same materials and following the same standards. "We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record." *Four Nines Gold, Inc. v. 71 Constr., Inc.,* 809 P.2d 236, 238 (Wyo.1991). Summary judgment serves the purpose of eliminating formal trials where only questions of law are involved. *Blagrove v. JB Mechanical, Inc.,* 934 P.2d 1273, 1275 (Wyo.1997); *England v. Simmons,* 728 P.2d 1137, 1141 (Wyo.1986). We review a grant of summary judgment by deciding a question of law de novo and afford no deference to the district court's ruling on that question. *Sammons v. American Auto. Ass'n,* 912 P.2d 1103, 1105 (Wyo.1996); *Blagrove,* 934 P.2d at 1275.

*Creation of an Implied Easement*

Both parties agree that *Beaudoin v. Kibbie,* 905 P.2d 939 (Wyo.1995), sets forth the factors to be considered in determining whether an implied easement exists:

(1) Common ownership followed by a conveyance separating the unified ownership; (2) before severance, the common owner used part of the property for the benefit of the other part, a use that was apparent, obvious, and continuous; and (3) the claimed easement is necessary and beneficial to the enjoyment of the parcel previously benefitted.

*Id.* at 941–42. In granting summary judgment, the district court found that the second and third factors do not exist in this case as evidenced by Norwest Bank's and Hacker's contrary agreement. Gray contends that Norwest Bank's continued use of the tunnels four years after signing the contract with the Hackers establishes both factors.

The creation of easements by implication is an attempt to infer the intention of the parties to a conveyance of land. This inference drawn from the circumstances surrounding the conveyance alone represents an attempt to determine the intention of parties who had not thought or had not bothered to put the intention into words, or perhaps more often, to parties who actually had formed no intention conscious to themselves. *Corbett v. Whitney,* 603 P.2d 1291, 1293 (Wyo.1979) (citing *United States v. O'Connell,* 496 F.2d 1329, 1332 (2nd Cir.1974); Restatement of Property, § 476, cmt. a, at 2978 (1944)). The doctrine of implied easements was created for courts to examine the particular facts suggesting the intent on the part of the parties to a conveyance and determine if the parties omitted granting an easement reasonably necessary for the use and enjoyment of the property. *Granite Properties Ltd. v. Manns,* 117 Ill.2d 425, 111 Ill.Dec. 593, 512 N.E.2d 1230, 1237 (1987). The implied easement does not arise where the parties to the conveyance expressly agree otherwise or where proof of its elements is not established. *Id.,* 111 Ill.Dec. 593, 512 N.E.2d at 1236.

In applying the doctrine of implied easements, we must determine the parties' intent at the time that the unified property was severed from a single possessory interest by conveyance from the common owner to a grantee. In this particular case, Norwest Bank, the common owner, severed the property by conveying part of it to the Hackers. That conveyance included an express agreement between the parties to discontinue use of the tunnels and required Norwest Bank to close them. The express contrary intent of these parties controls and prohibits the creation of an implied easement based upon previous use. There is no need to examine whether proof of the elements of an implied easement is established. That Norwest Bank did not close the tunnels may have been a breach of its contract with Hackers but does not create an implied easement for the benefit of Gray. Gray provides no evidence that an easement previously existed; and because the existence of an easement will not be implied before severance of a single possessory interest, an abandonment issue is not presented and need not be addressed.

The district court's order granting summary judgment is affirmed.