# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 17

### OCTOBER TERM, A.D. 2013

### February 4, 2014

TERRY MINER and COLLEEN MINER,
Husband and Wife,

Appellants
(Plaintiffs),

v.

JESSE & GRACE, LLC, a Wyoming
Close Limited Liability Company, and
SNOWY RANGE HOUSING, LLC, f/k/a
ZHAO & ZHOU, LLC, a Wyoming Close
Limited Liability Company,

Appellees
(Defendants).

S-13-0094

*Appeal from the District Court of Albany County*
The Honorable Jeffrey A. Donnell, Judge

*Representing Appellants:*
> Dennis C. Cook and Craig C. Cook of Cook and Associates, P.C., Laramie, Wyoming. Argument by Mr. Dennis C. Cook.

*Representing Appellees:*
> Kelly Neville Heck and Elisa M. Butler of Brown & Hiser, LLC, Laramie, Wyoming. Argument by Ms. Heck.

**Before KITE, C.J., and HILL, VOIGT\*, BURKE, and DAVIS, JJ.**

*\* Justice Voigt retired effective January 3, 2014.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KITE, Chief Justice.**

[¶1]    Appellants Terry and Colleen Miner purchased vacant property in Laramie, Wyoming.  Shortly thereafter, they discovered that the back of a four-plex apartment building on an adjacent property encroached five feet onto their property, along the length of the apartment building.  The Miners brought an action seeking a declaration that they own the encroaching portion of the apartment building and an order requiring that the building be partitioned and that Appellees Jesse & Grace, LLC and Snowy Range Housing, LLC (collectively the LLCs) be ejected from the encroaching portion of the building, or that the encroaching portion of the building be removed.  The Miners also requested damages for trespass and an apportionment of rental income earned from the apartment building.

[¶2]    The district court entered partial summary judgment against the Miners on their claim to an ownership interest in the apartment building.  Having concluded that the Miners had no ownership interest in the apartment building, the district court denied the Miners' requests to eject the LLCs from the building, their request to partition the building, and their demand for a proportional share of the apartment building's rental income.  A bench trial was held on the remaining issues, and following that trial, the court ruled that the LLCs were entitled to an implied easement on the Miners' property to accommodate the apartment building.  The court then entered an order granting the LLCs an implied easement on the Miners' property and enjoining the Miners from interfering with the LLCs' use of that easement.

[¶3]    We affirm the orders of the district court.

## ISSUES

[¶4]    The Miners present the following issues on appeal:

> I.    Whether the district court erred by denying [the Miners'] ejectment and trespass claims to assert ownership of the property underlying 20% of 388 Buchanan and the improvements thereon?

> II.    Whether the district court erred when it interpreted the clear and unambiguous language of [the Miners'] deed to their property and found as a predicate to its determination of an implied easement that the 20% of 388 Buchanan that is located on [the Miners'] property is not an improvement to that property?

1

III.	Whether the district court erred by finding that [the LLCs] have an implied easement to occupy [the Miners'] property with their encroaching building and then by enjoining [the Miners'] access to that implied easement on their property?

IV.	Whether partition of the co-owned building known as 388 Buchanan or whether an injunction to remove the encroaching part of that building from [the Miners'] property is the appropriate remedy in this case?

The LLCs phrase the issues on appeal as:

I.	The District Court correctly decided that the physical structure of 388 Buchanan belongs to [the LLCs] and as such, [the Miners] are not entitled to recover under their claims for partition and ejectment.

II.	The District Court correctly decided that [the LLCs] have an implied easement over the portion of [the Miners'] property underlying 388 Buchanan and the requisite setback area.

**FACTS**

[¶5]	The present dispute centers on an apartment building located on Lot 1 of Block 29 in West Laramie, Wyoming, with a street address of 388 Buchanan. The apartment building was constructed by Susan Jaycox in 2005, who at that time owned all of Lot 1. At the same time Ms. Jaycox was constructing the apartment at 388 Buchanan, she was also constructing a second apartment building on Lot 1, at 382 Buchanan. The buildings were situated perpendicular to each other, with the unit at 388 Buchanan facing east and the unit at 382 Buchanan facing north.

[¶6]	To finance the construction of the apartments at 388 and 382 Buchanan, Ms. Jaycox obtained separate loans for each building and secured each loan with a mortgage on a respective 70' x 130' area of Lot 1 on which each building was to be constructed. The recorded mortgage for 388 Buchanan encumbered a portion of Lot 1 described as: "The North 70 feet of the East 130 feet of Lot 1, Block 29, Town of West Laramie, now the City of Laramie, Albany County, Wyoming" (hereinafter referred to as the North Parcel). The recorded mortgage for 382 Buchanan encumbered a separate portion of Lot 1 described as: "The South 70 feet of the North 140 feet of the East 130 feet of Lot 1, Block 29, Town of West Laramie, now the City of Laramie, Albany County, Wyoming"

2

(hereinafter referred to as the South Parcel). The mortgages for the North Parcel and the South Parcel were each recorded on May 20, 2005.

[¶7]   Ms. Jaycox experienced financial difficulties and was unable to remain current on her mortgage payments on the North Parcel and the South Parcel. In 2007, the mortgagee for the North Parcel foreclosed upon the mortgage, and the North Parcel was sold to the mortgagee at a foreclosure sale in December 2007. Also in 2007, the mortgagee for the South Parcel foreclosed upon that mortgage, and the South Parcel was sold to that mortgagee at a foreclosure sale in January 2008.

[¶8]   In August 2008, Le Zhou and Hong Zhao, husband and wife, purchased the North Parcel. In November 2008, they transferred the North Parcel to Snowy Range Housing, LLC (f/k/a Zhao & Zhou, LLC). In October 2008, Le Zhou and Hong Zhao purchased the South Parcel, and in November 2008, they transferred that property to Jesse & Grace, LLC.[1]

[¶9]   Ms. Jaycox continued to own the remainder of Lot 1 until July 2009, when she sold her remaining interest in Lot 1 to Dale Hansen. Shortly thereafter, in August 2009, Mr. Hansen sold part of his interest in Lot 1, as well as additional property he owned in Lot 2, to the Miners, who also already owned property in Lot 2. The Miners paid $15,000 for the property they purchased from Mr. Hansen, and the recorded warranty deed described the conveyed property as:

> The North 140 feet of the West 44 feet of Lot 1, Block 29 and
> the South 140 feet of the East 17 feet of Lot 2, Block 29 And
> the North 90 feet of the East 84 feet of the Lot 2, Block 29,
> West Laramie, Albany County, Wyoming

Hereinafter, we will refer to the portion of Lot 1 that Mr. Hansen conveyed to the Miners as the West Parcel.

[¶10] Shortly after purchasing the property from Mr. Hansen, the Miners had their property surveyed to determine the property boundary so they could build a fence on the property's east boundary. Through that survey, the Miners discovered that the back of the apartment building at 388 Buchanan encroached onto their property, the West Parcel of Lot 1, by a little over five feet along the 64-foot length of the building. The record, for both the summary judgment and bench trial proceedings, contains the following map, which illustrates the property holdings after Mr. Hansen transferred the shaded portion to the Miners, the property boundaries, and the encroachment of the apartment building at 388 Buchanan onto the West Parcel.

---

[1] The LLCs are both owned by Le Zhou and Hong Zhao. The husband and wife are the sole managers and members of the LLCs.



LOTS 1 & 2, BLOCK 29
WEST LARAMIE, WYOMING

[¶11] On December 14, 2011, the Miners filed a Complaint against the LLCs seeking a declaration that they own the encroaching portion of the apartment building and an order requiring that the building be partitioned and that the LLCs be ejected from the encroaching portion of the building, or that the encroaching portion of the building be removed. The Miners also requested damages for trespass and an apportionment of rental income earned from the apartment building. The LLCs counterclaimed seeking a declaration that the North Parcel and South Parcel have an implied easement over the portions of the West Parcel occupied by the apartment building and its parking lot and requesting an injunction to enjoin the Miners from interfering with the LLCs' implied easement. In the alternative, the LLCs sought relief in the form of deed reformation and quiet title.

[¶12] The parties filed competing motions for summary judgment, and on December 21, 2012, the district court issued a decision ruling as follows:

4

The Court concludes as a matter of law that the portion of the apartment building that encroaches upon the West parcel is not an "improvement" or "appurtenance" attached to the West parcel. Consequently, the Court concludes that the July 2009 Warranty Deed from Susan Jaycox to Dale Hansen did not pass title to any portion of the apartment building at 388 Buchanan. Likewise, the August 2009 Warranty Deed for the West Parcel from Dale Hansen to Plaintiffs did not pass title to any portion of the apartment building at 388 Buchanan. Accordingly, Plaintiffs hold no title to any part of the apartment building, including the approximately 20% of the building that currently rests on the West parcel.

Lacking title to a portion of the apartment building, Plaintiffs' requests to eject Defendants from the apartment building and to partition the building must fail. Likewise, Plaintiffs' demand for a proportional share of the rental income for the apartment building cannot survive summary judgment.

* * *

Summary judgment is granted in Defendants' favor as far as ownership of the apartment building. Plaintiffs own no portion of the apartment building, approximately 20% of which encroaches upon Plaintiffs' land known as the West parcel. Consequently, Defendants' motion for summary judgment is granted as to Plaintiffs' requests to eject Defendants from the apartment building and for partition of the apartment building. Plaintiffs have no legal right to these remedies absent any ownership interest in the building. Likewise, Plaintiffs['] request for a proportional share of the rental income earned from the building also fails.

The Court, however, cannot order anything further at this time because genuine issues of material fact exist as to the appropriate remedy to correct the encroachment. Thus, the remedy and the amount of damages (if any) remain to be addressed at trial.

[¶13] A bench trial was held on the remaining claims shortly thereafter on January 8-9, 2013, and on January 18, 2013, the district court issued its decision. The court ruled that the LLCs had established the existence of an implied easement over the West Parcel for

5

the benefit of the apartment building at 388 Buchanan. Because the court found an implied easement, it denied the LLCs' alternative claim for deed reformation. The court further ruled that due to the existence of the implied easement, the LLCs had not unlawfully kept the Miners out of possession of the land underlying the apartment building, and the Miners' claims for trespass and ejectment must therefore fail.

[¶14] The district court granted the LLCs' request for injunctive relief, finding and directing as follows, record citations omitted:

> The Court finds an injunction is warranted in this case to enjoin Plaintiffs from interfering with Defendants' implied easements. The evidence presented at trial established that Plaintiff Terry Miner has acted in a way that interferes with Plaintiffs' implied easements and their tenants' privacy. Specifically, Plaintiff Terry Miner testified that he has threatened to tow tenants' vehicles and he has reported them as trespassers for entering the area covered by the implied easements. Additionally, Mr. Miner parked a broken-down trailer from a tractor-trailer combination directly behind the apartment building, blocking the sunlight from entering the windows of the lower apartments. After tenants complained to Defendants, city officials required Mr. Miner to move the trailer away from the apartment building to ensure that the tenants could escape through the windows in the event of a building fire. Mr. Miner moved the trailer to just outside of the five-foot setback area, where it sits today despite Mr. Miner's testimony at trial that he has plenty of space on his several other lands to store the trailer. He testified at trial that he parked the trailer there because he could. Mr. Miner's actions have amounted to little more than outright harassment and have been, to be kind, less than neighborly.

> Mr. Miner's actions have unreasonably burdened Defendants' implied easements over the premises and have impeded Defendants' ability to use and enjoy the implied easements. Additionally, monetary damages are insufficient to compensate Defendants for their loss of privacy and the harassment sustained by their tenants. The court finds that an injunction is appropriate here to prohibit the servient estate owner from interfering with the dominant estate owners' use of their implied easements. Mr. Miner is enjoined and ordered to refrain from interfering or threatening to interfere in any manner with any use of the areas described above by

6

Defendants or Defendants' agents, employees, tenants, guests or others.

[¶15] The Miners timely appealed the orders of the district court.

## STANDARD OF REVIEW

[¶16] The Miners appeal the district court's summary judgment order and its bench trial order. Motions for summary judgment come before the trial court pursuant to Rule 56(c) of the Wyoming Rules of Civil Procedure, which requires that

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*Formisano v. Gaston*, 2011 WY 8, ¶ 3, 246 P.3d 286, 288 (Wyo. 2011). We review a grant of summary judgment as follows:

> We review a summary judgment in the same light as the district court, using the same materials and following the same standards. *Id*.; *40 North Corp. v. Morrell*, 964 P.2d 423, 426 (Wyo.1998). We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. *Id*. A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. *Id*. If the moving party presents supporting summary judgment materials demonstrating no genuine issue of material fact exists, the burden is shifted to the non-moving party to present appropriate supporting materials posing a genuine issue of a material fact for trial. *Roberts v. Klinkosh*, 986 P.2d 153, 155 (Wyo.1999); *Downen v. Sinclair Oil Corp.*, 887 P.2d 515, 519 (Wyo.1994). We review a grant of summary judgment deciding a question of law de novo and afford no deference to the district court's ruling. *Roberts v. Klinkosh*, 986 P.2d at 156; *Blagrove v. JB Mechanical, Inc.*, 934 P.2d 1273, 1275 (Wyo.1997).

*Lindsey v. Harriet*, 2011 WY 80, ¶ 18, 255 P.3d 873, 880 (Wyo. 2011).

[¶17] With respect to the rulings made by the court following the bench trial, we apply the following standard of review:

> Following a bench trial, this court reviews a district court's findings and conclusions using a clearly erroneous standard for the factual findings and a *de novo* standard for the conclusions of law. *Piroschak v. Whelan*, 2005 WY 26, ¶ 7, 106 P.3d 887, 890 (Wyo. 2005).

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

> *Piroschak,* ¶ 7, 106 P.3d at 890. Findings may not be set aside because we would have reached a different result. *Harber v. Jense*, 2004 WY 104, ¶ 7, 97 P.3d 57, 60 (Wyo. 2004). Further,

> we assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it.

> *Id.*

*Claman v. Popp*, 2012 WY 92, ¶ 22, 279 P.3d 1003, 1012 (Wyo. 2012) (quoting *Pennant Service Co., Inc. v. True Oil Co., LLC,* 2011 WY 40, ¶ 7, 249 P.3d 698, 703 (Wyo. 2011)). We review the district court's conclusions of law *de novo*. *Lieberman v. Mossbrook,* 2009 WY 65, ¶ 40, 208 P.3d 1296, 1308 (Wyo. 2009).

## DISCUSSION

### A. *Miners' Ownership Interest in Apartment Building*

8

[¶18]  We address first the Miners' argument that the district court erred in ruling that they have no ownership interest in the apartment building at 388 Buchanan.  In ruling on the Miners' claim to an ownership interest in the apartment building, the question on which the court focused, and that the parties agree is determinative, was whether the apartment building is an improvement or an appurtenance attached to the West Parcel. The district court found no disputed issue of material fact and concluded as a matter of law that "the portion of the apartment building that encroaches upon the West [P]arcel is not an 'improvement' or 'appurtenance' attached to the West [P]arcel."  We conclude that the court's ruling is supported by the record on summary judgment and is in accordance with law.

[¶19]  Ms. Jaycox conveyed the West Parcel (and other property not at issue) to Mr. Hansen by warranty deed.  That warranty deed conveyed the West Parcel "[t]ogether with any improvements thereon or appurtenant [t]hereto."  Shortly thereafter, Mr. Hansen conveyed the West Parcel (and other property not at issue) to the Miners by warranty deed.  That warranty deed conveyed the West Parcel "together with all improvements located thereon," and "with all appurtenances thereunto belonging."  The question then is whether an interest in the apartment building was conveyed with the West Parcel as an improvement or appurtenance attached to the West Parcel.  As the district court observed, this is a question of deed interpretation.

[¶20]  This Court has observed that deeds are contracts and as such we use our typical contract interpretation principles to interpret them.  *Ecosystem Res. LC v. Broadbent Land & Res., LLC*, 2012 WY 49, ¶ 12, 275 P.3d 413, 417 (Wyo. 2012) (citing *Gilstrap v. June Eisele Warren Trust*, 2005 WY 21, ¶ 12, 106 P.3d 858, 862 (Wyo. 2005)).

> Given that deeds are contracts,
>
>> [o]ur deed interpretation rules focus on deriving the intentions of the parties. *Mullinnix LLC v. HKB Royalty Trust*, 2006 WY 14, ¶ 22, 126 P.3d 909, 919 (Wyo.2006); *Caballo Coal Co. v. Fid. Exploration & Prod. Co.*, 2004 WY 6, ¶ 11, 84 P.3d 311, 314 (Wyo.2004). We start with the language utilized by the parties to the deed, giving that language its plain and ordinary meaning. *Hickman v. Groves*, 2003 WY 76, ¶ 6, 71 P.3d 256, 258 (Wyo.2003). If the language is clear and unambiguous, we look only to the "four corners" of the deed in ascertaining the parties' intent. *Caballo Coal*, ¶ 11, 84 P.3d at 314.
>
> However, we have also recognized that, even if a contract is

9

unambiguous, we can examine evidence of the circumstances surrounding the execution of the deed to arrive at the parties' intent. *Hickman*, ¶¶ 6–11, 71 P.3d at 257–58. Relevant considerations may include the relationship of the parties, the subject matter of the contract, and the parties' purpose in making the contract. *Id*.

*Ecosystem I*, ¶¶ 9–10, 158 P.3d at 688 (footnote omitted). *See also, Davidson Land Co. v. Davidson*, 2011 WY 29, ¶ 14, 247 P.3d 67, 71–72 (Wyo.2011).

Facts and circumstances evidence is used as an aid in discerning the plain meaning of the language used in the deeds. "Plain meaning" is defined as the meaning the "'language would convey to reasonable persons ***at the time and place of its use.***'" *Newman v. RAG Wyoming Land Co.*, 2002 WY 132, ¶ 12, 53 P.3d 540, 544 (Wyo.2002), quoting *Moncrief v. Louisiana Land and Exploration Company*, 861 P.2d 516, 524 (Wyo.1993) (emphasis added).

*Ecosystem Res.*, ¶ 12, 275 P.3d at 417-18.

[¶21]  In giving the terms "improvement" and "appurtenance" their plain meaning, we look to how this Court has defined the terms.  We have defined the term "improvement" to mean:

A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes. Generally has reference to buildings, but may also include any permanent structure or other development, such as a street, sidewalks, sewers, utilities, etc. An expenditure to extend the useful life of an asset or to improve its performance over that of the original asset. Such expenditures are capitalized as part of the asset's cost. *Contrast* with Maintenance *and* Repair. *See also* Betterment; Internal improvements; Leasehold improvements.

*Covington v. W.R. Grace-Conn., Inc.*, 952 P.2d 1105, 1107 (Wyo. 1998) (quoting *Black's Law Dictionary* 757 (6th ed. 1990)).

10

[¶22] This Court has given the term "appurtenance" a similar meaning, defining an appurtenance as:

> '* * * something annexed to another thing more worthy as principal, and which passes as incident to it, * * * An article adapted to the use of the property to which it is connected, and which was intended to be a permanent accession to the freehold. *Szilagy v. Taylor*, 63 Ohio App. 105, 25 N.E.2d 360, 361.'

*King v. White*, 499 P.2d 585, 589 (Wyo. 1972) (quoting *Black's Law Dictionary* 133 (4th ed.)).

[¶23] Applying these definitions, the district court concluded that the encroaching portion of the apartment building was not an "improvement" or an "appurtenance" attached to the West Parcel because: Ms. Jaycox, the developer, did not intend the building or any part of it to be placed on the West Parcel; the apartment building was not treated as a part of the West Parcel; and, as the district court phrased it, the "building was never intended to enhance the value, beauty, or utility of the West Parcel, or to adapt the land for new or further purposes." The evidence before the court on summary judgment supports these findings.

[¶24] On summary judgment, the district court had before it two affidavits from both Ms. Jaycox and Mr. Miner. In her first affidavit, Ms. Jaycox attested, in part:

> 13. I acted as my own general contractor for the construction of 388 Buchanan and 382 Buchanan and submitted a Site Plan to the City of Laramie in order to obtain the requisite building permits which was subsequently approved. * * *
>
> 14. According to [the] plan, the western wall of 388 Buchanan was to be one hundred nineteen feet to the west of the eastern property boundary of Lot 1.
>
> 15. I personally measured and staked out the foundation site of 388 Buchanan in advance of the excavator who was to prepare the site for the pouring of the concrete foundation.
>
> 16. I arrived on the building site of 388 Buchanan as the foundation was being poured and realized that the foundation rested more to the west than where I had staked it

11

out, which was later problematic as it was approximately five feet west of the 70' x 130' area I originally allotted to 388 Buchanan.

17.     A common parking lot was laid between 382 Buchanan and 388 Buchanan, including some parking spaces on [the] north side of 388 Buchanan.

18.     388 Buchanan is an eastern-facing two-story rectangular building with two four-bedroom units upstairs and two identical units downstairs whose windows are garden level.  The only doors to access the interior of 388 Buchanan are on the eastern wall.

* * *

34.     I retained ownership of the [West Parcel] until July 13, 2009 when I conveyed it to Dale Hansen.

* * *

37.     Between May 2, 2008 and July 13, 2009 while I retained ownership of the [West Parcel], the owners of the [North Parcel] continued the prior use of 388 Buchanan, parking spaces and the set-back area and at no time did I believe that I owned any portion of the physical structure of 388 Buchanan nor did I assert any right to access or have possession or otherwise act as an owner over any part of 388 Buchanan.

[¶25]  In her second affidavit, Ms. Jaycox further attested:

13.     While I realized that the foundation for 388 Buchanan was poured at a location more to the west than where I had staked it out for the excavator, I did not measure the difference and did not know at that time that a small portion of the foundation now rested on the [West Parcel].

[¶26]  In his first affidavit, Mr. Miner attested to the following concerning his purchase of property from Mr. Hansen, which property included part of Lot 2 as well as the West Parcel:

2.     I am a co-plaintiff with my Wife, Colleen Miner, in the above-captioned matter.

3.     Although my wife, Colleen Miner, is a named party in this matter, as a joint tenant with me, I am solely

12

responsible for the management and maintenance of our property which is the subject of this matter.

* * *

6.     I purchased the property to add to the existing adjoining property we own in Lot 2 in Block 29, to provide additional parking and storage space for my tenants in apartments on Lot 2 at 371 and 379 Lincoln Street as well [as] to construct a possible rental property[,] either rental storage or rental residential units under the current zoning for the property.

[¶27] Mr. Miner added the following attestation in his second affidavit:

10.     At this time there is no city water or city sewer service available in Madison Street between Lincoln and Buchanan Streets, but water service is likely with further annexation of the trailer park on the north side of Madison. Nevertheless, development of storage units that do not require either water or sewer service are possible now on the land my wife and I purchased from Dale Hanson (sic) when the cloud on the title to that property is removed as a result of this lawsuit.

[¶28] From these statements, it is evident that although the back of the apartment building at 388 Buchanan encroaches on the West Parcel, the building is not an improvement or appurtenance attached to the West Parcel. Ms. Jaycox, the property's developer, did not intend to make the building a permanent accession to the West Parcel. And, the building was not situated such that it adapted the West Parcel to a new use. In particular, parking for the apartment building was to the east and north of the building, and the only entrance was on the building's east side. Finally, the interested parties did not behave as if the building were an improvement to the West Parcel. Ms. Jaycox did not assert any right of access, possession or ownership to the building during the time she owned the West Parcel independent of the North and South Parcels, and Mr. Miner himself did not buy the West Parcel with a view to using or otherwise drawing income from the apartment building at 388 Buchanan. In sum, the circumstances surrounding the development of the apartment building and the conveyance of the West Parcel establish that the apartment building is not an improvement or appurtenance attached to the West Parcel.

[¶29] With respect to the affidavit evidence on which the district court based its summary judgment, we reject the Miners' suggestion that the court improperly relied on parol evidence to establish the parties' subjective intent in using the terms

13

"improvement" and "appurtenance" to describe the scope of the conveyance. The affidavit statements that supported summary judgment did not express an intent concerning the meaning of the warranty deeds' terminology, and nor did they speak to any agreement as to what the parties to the deeds intended to convey. Instead, the affidavits described the circumstances surrounding the planning, permitting, and construction of the apartment building, and the actual and anticipated uses of the West Parcel. These are the types of showings for which parol evidence is properly admitted.

> In theory, the circumstances surrounding the execution of a contract may always be shown and are always relevant to a determination of what the parties intended by the words they chose. In construing a contract, a court seeks to ascertain the meaning of the contract at the time and place of its execution. Thus, although the parties may not, because of the parol evidence rule, testify as to agreements they made before or contemporaneously with the execution of the contract, the circumstances surrounding the execution of the contract bear upon the contract's meaning. Some courts, not fully appreciating the distinction between the rule that permits evidence of the surrounding circumstances to be considered, and the rule which prohibits the introduction of evidence of collateral agreements, have held that the former rule runs afoul of the latter, the parol evidence rule. Indeed, pronouncements can be found in numerous cases to the effect that evidence of the circumstances surrounding the execution of a contract may be admitted, like any other parol evidence, only where the contract's meaning is ambiguous. These decisions in truth, reflect a misunderstanding both of the scope and purpose of the parol evidence rule, and the meaning of the phrase "surrounding circumstances;" "surrounding circumstances" do not embrace either the prior or contemporaneous collateral agreements of the parties or their understanding of what particular terms in their agreement mean. Rather, the term refers to the commercial or other setting in which the contract was negotiated and other objectively determinable factors that give a context to the transaction between the parties. Such matters as, for example, whether one or both parties was new to the trade, whether either or both had counsel, and the nature and length of their relationship, as well as their age, experience, education and sophistication would all be part of the "surrounding circumstances," admissible, if relevant, notwithstanding the parol evidence rule.

14

*Hickman v. Groves*, 2003 WY 76, ¶ 12, 71 P.3d 256, 260 (Wyo. 2003) (quoting 11 Samuel Williston, *A Treatise on the Law of Contracts*, § 32:7 (4th ed.1999) (footnotes omitted)).

[¶30] We also find unpersuasive the Miners' argument that the district court should have rejected the statements of Ms. Jaycox as self-serving. Specifically, the Miners argue:

> Apparently it did not occur to the District Court that Ms. Jaycox's statements could well have been motivated by a desire to avoid liability pursuant to her warranty of title to "improvements" on the West parcel at the root of Appellants' title in this matter.

[¶31] If the Miners had evidence that Ms. Jaycox had been untruthful in her statements concerning where she measured and staked the foundation for the apartment building and where the foundation was dug and poured, it was incumbent on them to present that evidence in their summary judgment opposition. A party may not avoid summary judgment with bare assertions concerning the truthfulness of a witness' affidavit. An affidavit must be countered with evidence, not speculation concerning the credibility of the attesting witness. *See Kibbee v. First Interstate Bank*, 2010 WY 143, ¶ 28, 242 P.3d 973, 983 (Wyo. 2010) (where movant has adequately supported summary judgment, opposing party must come forward with competent evidence admissible at trial showing genuine issues of material fact and conclusory statements or mere opinions will not suffice). The Miners point to no such evidence, and we therefore reject this argument.

[¶32] Finally, we agree with the district court that the facts of this case are analogous to those in *Szilagy v. Taylor*, the Ohio case to which this Court cited in defining the term "appurtenance." *See King*, 499 P.2d at 589. In *Szilagy*, the owner of two adjoining lots constructed a building on his land. *Szilagy v. Taylor*, 25 N.E.2d 360, 361 (Ohio App. 1939). The owner intended the building to rest on a single lot, but mistakenly overlapped the other lot. *Id*. The two lots were later conveyed to different individuals, and the new owner of the lot on which a small portion of the building encroached, claimed he owned that part of the building as part of the property he had purchased. *Id*. The court rejected the suggestion that the encroaching part of the building was an appurtenance, reasoning

> Things pass as incidents to or appurtenances of realty when they are attached thereto and are essential to its use; in other words, when they are fixtures. Two general tests to be applied in determining whether a particular article is a fixture are, adaptation or application to the use or purpose to which that part of the realty to which it is connected is appropriated, and intention to make the article a permanent accession to the

15

freehold.

> While the thing claimed in this case as an appurtenance was attached to the real estate, the facts disclose conclusively that it was not so attached with an intention to make it a permanent part thereof, and also that it was not adapted to such use as a part of the realty; and therefore the appellant had no title to the part of the building which stood on his premises[.] * * *

*Szilagy*, 25 N.E.2d at 361.

[¶33] As in *Szilagy*, the undisputed facts in this matter establish that the back portion of the apartment building at 388 Buchanan was not attached to the West Parcel with an intention to make it a permanent part thereof or to adapt the West Parcel to a use associated with the apartment building. The district court's summary judgment against the Miners on their claim to an ownership interest in the apartment building was supported by the record and in accordance with law.[2]

## B.    *Implied Easement*

[¶34] We turn next to the Miners' contention that the district court erred in ruling that the North and South Parcels hold an implied easement on the West Parcel for the apartment building at 388 Buchanan, the building's north parking lot, and the required five-foot setback area. The court entered its implied easement ruling following a bench trial, and we conclude that the court's ruling is supported by that evidentiary record and is in keeping with our law governing implied easements.

---

[2] The Miners have suggested on appeal that the district court divided ownership of the apartment building between the owners of the North Parcel and the South Parcel, a result which they suggest unfairly leaves them out of the partitioning of the building. The question arises, because, as illustrated by the map included in our opinion, although the majority of the apartment building, that is 55% of the building, sits on the North Parcel, parts of the building encroach on both the West Parcel and the South Parcel. Specifically, 20% of the building sits on the West Parcel, which parcel is owned by the Miners, and 25% of the building sits on the South Parcel, which parcel is owned by Jessie & Grace, LLC. The Miners' suggestion is that the court implicitly divided ownership of the building between the North Parcel and South Parcel when it granted the South Parcel an implied easement on the West Parcel to accommodate the apartment building. We do not find, however, that the court divided ownership of the building between the owners of the North Parcel and the South Parcel, or decided any issues that could potentially arise between the North Parcel and the South Parcel. In fact, the court expressly stated that it would not be addressing such issues, noting in its decision letter following the bench trial, "Only the encroachment onto the West parcel  is at issue in this trial because the North parcel and South parcel are essentially owned by identical parties who have joined together to request common relief in this lawsuit." In short, any boundary issues or building ownership issues between the North Parcel and the South Parcel are left undecided by the court's ruling below and are not before this Court on appeal.

16

[¶35] This Court has held that an implied easement will be recognized where the easement is consistent with the intentions of the parties to a conveyance. *Hansuld v. Lariat Diesel Corp. (Hansuld II)*, 2010 WY 160, ¶ 10, 245 P.3d 293, 298 (Wyo. 2010). We have explained:

> The creation of easements by implication is an attempt to infer the intention of the parties to a conveyance of land. *Gray v. Norwest Bank Wyoming, N.A.*, 984 P.2d 1088, 1091 (Wyo.1999). "This inference drawn from the circumstances surrounding the conveyance alone represents an attempt to determine the intention of parties who had not thought or had not bothered to put the intention into words, or perhaps more often, to parties who actually had formed no intention conscious to themselves." *Id.* (citing *Corbett*, 603 P.2d at 1293). "The doctrine of implied easements was created for courts to examine the particular facts suggesting the intent of the parties to a conveyance and determine if the parties omitted granting an easement reasonably necessary for the use and enjoyment of the property." *Id.* The implied easement does not arise where the parties to the conveyance expressly agree otherwise or where proof of its elements is not established. *Id.*
>
> In applying the doctrine of implied easements, we must determine the parties' intent at the time that the unified property was severed from a single possessory interest by conveyance from the common owner to a grantee.

*Hansuld II*, ¶ 10, 245 P.3d at 298 (quoting *Hansuld v. Lariat Diesel Corp.*, 2003 WY 165, ¶¶ 16-17, 81 P.3d 215, 218-19 (Wyo. 2003) (*Hansuld I*)).

[¶36] Three elements must be proved to establish an implied easement:

> (1) common ownership followed by a conveyance separating the unified ownership; (2) before severance, the common owner used part of the property for the benefit of the other part, a use that was apparent, obvious, and continuous; and (3) the claimed easement is necessary and beneficial to the enjoyment of the parcel previously benefitted.

*Hansuld II*, ¶ 10, 245 P.3d at 298 (quoting *Hansuld I*, ¶ 15, 81 P.3d at 218).

17

[¶37] Although the Miners appear to contest only the second element, we will address each element separately.

### 1. *Unified Ownership followed by Separating Conveyance*

[¶38] The evidence in the record is clear that Ms. Jaycox owned all of Lot 1 before she divided the lot for financing the construction of apartment buildings on the North Parcel and the South Parcel. Although Ms. Jaycox had encumbered the North and South Parcels with mortgages in 2005, under Wyoming law, her ownership interest remained unified until 2008 when the North and South Parcels were sold in foreclosure. *See Robinson Mercantile Co. v. Davis*, 26 Wyo. 484, 187 P. 931, 932 (1920) (holding that in Wyoming, the "mortgage simply creates a lien upon the land, and it must be sold on foreclosure to pass the title"). In 2008, when the parcels were sold to the mortgagees at the foreclosure sales, Ms. Jaycox's unified ownership was clearly separated.

### 2. *Use of Servient Property in an Apparent, Obvious and Continuous Manner*

[¶39] There is no dispute that the apartment building was obvious in the sense of being clearly visible or that the building had remained continuously in its location that included an encroachment onto the West Parcel. What the Miners do take issue with is whether the encroachment was apparent, and in particular they dispute the district court's finding that the encroachment "was readily determinable with a tape measure and a few minutes' time." The Miners contend the opposite was true and that to determine the property lines between the North, South and West Parcels was a complicated matter that required a professional survey. In support of this assertion, the Miners point to the trial testimony of John Erickson, the surveyor who prepared the survey the Miners requested after their purchase of the West Parcel.

[¶40] The Miners do not provide a record cite to Mr. Erickson's testimony, and in our review of that testimony we found no suggestion by Mr. Erickson that the property at issue presented uniquely difficult conditions for completing a survey. Mr. Erickson testified:

> Q. Okay. What do you do on the property?
>
> A. Well, in this case – you know, all of West Laramie, that was originally platted, you know, way a long time ago. So we have to determine – basically, you determine the rights of way, so that would be Lincoln, Madison, Buchanan, and I can't remember what – the street to the south. But you have to determine the block boundaries. And then you work inside to determine the smaller parcels.

18

So the first thing we would have done is go out there and look for any monuments that might have been set by surveyors that were there previous to us. You would look at things like old fences, that type of thing.

\* \* \*

A. And then you take that information, and the surveyor uses his best judgment – you know, it's an art and a science – takes all the stuff you measure out there to decide where, in fact, the boundary is.

[¶41] Mr. Erickson did not testify that the Lot 1 property boundaries could not be determined without a professional survey. Even if he had so testified, however, we do not find this to mean that the encroachment was not apparent. In the context of an implied easement, an apparent use or encroachment does not mean, as the Miners argue, that the use or encroachment is apparent without some effort to find it.

[¶42] This Court has held that to be apparent, a use "must be plainly and physically apparent by reasonable inspection." *Corbett v. Whitney*, 603 P.2d 1291, 1293 (Wyo. 1979). Other authorities have explained:

> To be sufficient as the basis of an implied easement on the severance of ownership, a use imposed on one part of a property for the benefit of another part must be apparent. "Apparent," as used in this context, does not refer to actual visibility, *but rather susceptibility of ascertainment on reasonable inspection by persons ordinarily conversant with the subject*. Thus, underground drains may constitute an implied easement, even though not visible from the surface. However, *each case must depend upon its particular facts*, and if such a drain is not apparent upon an inspection the right to use it will not be implied.

25 Am.Jur.2d *Easements and Licenses* § 26 (Nov. 2013 Update) (footnotes omitted) (emphasis added); *see also Cellco P'ship v. Shelby County*, 172 S.W.3d 574, 590 (Tenn. Ct. App. 2005) (quoting 28A C.J.S. *Easements* § 66 (1996)) ("Apparent or obvious use in this connection does not mean actual visibility, but rather susceptibility of ascertainment on reasonable inspection by persons ordinarily conversant with the subject.").

[¶43] We turn then to the record to determine whether the facts support a finding that the encroachment of the apartment building onto the West Parcel was apparent on reasonable inspection. More particularly, we must consider whether the facts support a finding that

19

the encroachment could have been ascertained on reasonable inspection by persons ordinarily conversant with the subject.

[¶44] The evidence was clear in this case that a property survey would have revealed the encroachment by the apartment building, and that the survey did in fact do so in pretty short order. Mr. Miner testified:

> Q. So when you did that, what – were you there when the surveyors were there?
>
> A. Yes. I was over working on the fence behind 371 and 379.
>
> Q. What happened when the surveyors came out?
>
> A. They came out and I had gone to lunch. And I had swung back over to my office. And John Erickson called me up and explained to me that we had a problem. And I drove back over. It's only five or six blocks from my office. And I drove back over. And I met with John.
>
> And he said, "This building is on your property." And I'm going, "How much?" And then he showed me. He took a pencil and drew a line on the building on both ends and showed me. * * *

[¶45] The facts support a finding that upon reasonable inspection by a surveyor, who is of course conversant with determining property boundaries, the encroachment could have been discovered before the Miners purchased the property that included the West Parcel. The facts also support a finding that Mr. Miner was conversant in determining property boundaries and failed to make any type of inspection himself. Mr. Miner testified that he has experience in buying properties, that he has an "exact 3-foot step," and that he has "walked off" numerous properties to measure the property boundaries. With regard, however, to his purchase of the property from Mr. Hansen, which included the West Parcel, Mr. Miner testified:

> Q. Okay. You testified that when you purchased— or when you were contemplating the purchase of 371 and 379, that you walked off the property?
>
> A. That's correct.
>
> Q. And that you have an exact 3-foot stride?

20

A.     I do.

Q.     I assume you know that because you have walked off multiple properties?

A.     Yes, I have.

Q.     You have some experience in doing that.  So I'm assuming that you walked off Mr. Hansen's property when he offered it to you.

A.     No, I didn't.  It was a year later and it was so cheap it wasn't—it wasn't an option.

Q.     So it's your opinion that you got a steal when you bought this land from Mr. Hansen?

A.     Yes, I do.

Q.     And Mr. Hansen never made any representations to you that you owned any portion of 388 Buchanan, correct?

A.     No, he did not.

Q.     Had you walked off Dale's lot that he sold you prior to purchasing?  You testified that you had been looking at it.

A.     No, I hadn't.  I mean, it's obviously attached to my land, so just looking at it visually, that it was what I wanted.

[¶46] Mr. Miner offered similar reasoning for his decision to not have the property he purchased from Mr. Hansen surveyed before completing the transaction.  On direct examination, Mr. Miner testified:

Q.     Okay.  So talk to me about the purchase, when Mr. Hansen came to you and said it was for sale, that cross-hatched area.

21

A.     He called me – or he showed up over there while I was working on the fence. And he came in and he said that he had purchased it and that he didn't want it.

And I looked at him. And I had a number in mind that I was willing to pay him for it. And I asked him, I said, "Well, how much do you want?" And he said, "If you buy it now, you can have it for 15,000."

And it was either that day or the next day that he came over with the deed to the land. I purchased it. I told him I would take it right then.

Q.     Okay.

A.     So there was no question. It was a swinging deal, and I took it.

* * *

Q.     Okay. So when you talked to Mr. Hansen about the purchase of this property, was there any discussion of what the boundaries of the property were?

A.     No, sir.

Q.     You had had a survey done of 371 and 379?
A.     Yes.

Q.     Why not here?

A.     371 and 379 cost me $350,000. This cost me 15. And when you're standing there on the lot, you look out and you see this area of dirt.

Q.     Were there any fences on the land?

A.     There were lots of fences. I got worried about the fences.

[¶47] On cross-examination, Mr. Miner testified:

Q.     Do you believe that it's wise practice for a property owner to obtain a survey before they buy something?

22

A. It depends. You're asking an ambiguous question where if I'm buying my grave sites up here at Green Hill, I never went and investigated that, and I never bought title insurance. I own graves.

Q. No. I'm talking about –

A. If you're talking commercially on a $15,000 lot, no. On a $10,000 lot? No. On a $350,000 lot? You're dang right. You cover your everything, because you need to know that when you get it, it's yours. If I lose $15,000, it's going to hurt, but it isn't going to kill me. I lose 400, 350,000, that's going to kill me.

[¶48] The record is clear that the Miners voluntarily chose to close on their property transaction with Mr. Hansen quickly and with virtually no inspection of the property. The evidence is equally clear that on reasonable inspection, the apartment building's encroachment onto the West Parcel could have been ascertained. The district court correctly concluded that the encroachment was apparent, obvious and continuous.

### 3. *Necessity of Implied Easement*

[¶49] The final element for establishing an implied easement requires that the easement be necessary and beneficial to the enjoyment of the property previously benefitted. In other words, the easement must be necessary and beneficial to the continuing use of the apartment at 388 Buchanan. Regarding this element, we have said:

> We look now at the third element; i.e., the claimed easement was necessary and beneficial to the enjoyment of the benefited parcel. *Id.* We discussed the concept of necessity in the context of implied easements in *Corbett*, 603 P.2d at 1293. We quoted from Restatement of Property § 476 cmt. G, at 2983-84 (1944), as follows:
>
> "... If no use can be made of land conveyed or retained without the benefit of an easement, it is assumed that the parties intended the easement to be created ...
>
> "... If land can be used without an easement, but cannot be used without disproportionate effort and expense, an easement may still be implied in favor of either the conveyor or the conveyee on the basis of necessity ...

23

"... In the different situations that may appear, a constantly decreasing degree of necessity will require a constantly increasing clearness of implication from the nature of the prior use. Accordingly, no precise definition of necessity can be made."

603 P.2d at 1293.

*In re Estate of Shirran*, 987 P.2d 140, 145 (Wyo. 1999).

[¶50] The Miners do not appear to contest that the easement on the West Parcel is necessary and beneficial to the continued use of the apartment building, and we agree with the district court's assessment of this element and find it fully supported by the record. The court stated, with footnotes omitted:

Here, the necessity and benefit of the easement is obvious—it would require great effort and expense from the Defendants to use the apartment building without the benefit of the easement. Indeed, Plaintiffs request that a significant portion of the building be removed from their property or that the building be torn down entirely. The testimony at trial established that Defendants could not construct a new or different fourplex on the North Parcel because it does not contain enough square footage under the City of Laramie's new building code. The parties agreed, and the Court finds, that Defendants could only legally construct a duplex on the North parcel, at best, thus depriving them of the income stream of two existing apartments. More likely, if a portion were removed from Plaintiff's property, the building would have to be completely torn down and could not as a practical matter, be replaced at all, thus causing several hundreds of thousands of dollars of loss. Consequently, Defendants clearly established the necessity and benefit of the claimed easement.

### 4. Remaining Claims Regarding Implied Easement

[¶51] Having concluded that the elements of an implied easement are satisfied, we turn to the Miners' remaining claims regarding the easement, including their contentions: that under Wyoming law an implied easement may not be granted for a building; that the implied easement effected a private taking of their property; and that the district court

24

improperly rejected their claims for trespass, ejectment and partitioning of the apartment building.

[¶52]  The Miners point out that the implied easements that have been recognized in our case law are solely for property access and utilities, and from this, they argue that Wyoming does not recognize implied easements for buildings.  We do not accept the Miners' leap of reasoning.  While it is true that our cases have addressed implied easements only in the context of easements for property access and utilities, we have not in those cases suggested that an implied easement may not be established for a building. *See Hansuld II*, 2010 WY 160, 245 P.3d 293 (access and water line); *Hansuld I*, 2003 WY 165, 81 P.3d 215 (access); *Shirran*, 987 P.2d 140 (access); *Gray v. Norwest Bank Wyoming, N.A.*, 984 P.2d 1088 (Wyo. 1999) (underground tunnel use); *Beaudoin v. Kibbie*, 905 P.2d 939 (Wyo. 1995) (access); *Corbett*, 603 P.2d 1291 (access).  Indeed, implied easements are generally recognized for any number of beneficial uses, including property access, utilities, ditches, pipelines, and structures. *See* 25 Am.Jur.2d *Easements and Licenses* § 5 (Nov. 2013 update) ("An easement . . . may exist in land for the benefit of a building or structure."); Annotation, *Implied Easement upon Severance of Tract where Building is Near or Encroaches upon the Dividing Line*, 53 A.L.R. 910 (1928 Updated 2014); Annotation, *Physical Conditions which will Charge Purchaser of Servient Estate with Notice of Easement*, 41 A.L.R. 1442 (1926 Updated 2014).

[¶53]  The Miners' next contention, that the implied easement amounted to a private taking, also fails.  This Court has held that land subject to an easement passes with that easement and the enforcement or recognition of that easement does not effect a taking.

> In 3 R. Powell, The Law of Real Property Ch. 34, ¶ 410 at 61–66 (1985), the author explains a common-law way of necessity or, as it is sometimes called, an easement by necessity:
>
> "A transfer of an interest in land sometimes gives rise to circumstances which justify the implication that an easement must necessarily have been granted or reserved by the grantor. * * * When an owner of land conveys to another an inner portion thereof, which is entirely surrounded by lands owned by the conveyor, or by the conveyor plus strangers, a right of access across the retained land of the conveyor is normally found. * * * Thus, unless a contrary intent is inescapably manifested, the conveyee is found to have a right-of-way across the retained land of the conveyor for ingress to, and egress from, the landlocked parcel."

25

Such a common-law way of necessity does not constitute a *taking* subject to constitutional restraints found in Art. 1, §§ 32 and 33 of the Constitution of the State of Wyoming because the common law presumes that the grant of ingress and egress from land conveyed by the owner of the servient estate was intended by the parties. *Snell v. Ruppert*, Wyo., 541 P.2d 1042 (1975); 3 R. Powell, The Law of Real Property, supra, Ch. 34, ¶ 410 at 61–68. The rule of the common law is that a way of necessity goes with the land constituting the dominant estate, and no payment of additional compensation is contemplated.

*Bush v. Duff*, 754 P.2d 159, 163 (Wyo. 1988) (footnotes omitted).

[¶54] We also reject the Miners' contention that the district court improperly rejected their claims for trespass, ejectment and partitioning of the apartment building. Based on our holdings that the district court correctly denied the Miners' claim to an ownership interest in the apartment building and correctly granted the LLCs an implied easement for the encroachment onto the West Parcel, there simply remains no basis for the Miners' claims that the LLCs are unlawfully interfering with the Miners' possession of their property or that they are entitled to a division of the apartment building.

### 5. *Clerical Error in Implied Easement*

[¶55] The parties did not raise any concerns with the district court's description of the implied easements it granted in favor or the North and South Parcels. On our review of those easement descriptions, however, we identified one clerical error in the description of the implied easement to benefit the South Parcel. That description reads, with our emphasis added:

Commencing on the west line of the South parcel ***at a point 5.0 feet south of the southern edge of the apartment building*** at 388 Buchanan Street (as shown on the drawing attached hereto); thence westerly along a line parallel to the southern edge of the said apartment building 10.53 feet; ***then northerly along a line parallel to the west line of the South parcel 20.0 feet***; thence easterly along a line parallel to the north line of Lot 1, Block 29 of the Town of West Laramie (now City of Laramie), Wyoming to the northwest corner of the South Parcel; thence in a southerly direction along the west line of the South parcel to the point of beginning.

26

[¶56]   As we read the attached drawing to which this description refers, a 20-foot portion of the building located on the South Parcel encroaches onto the West Parcel.  The district court started the easement at a point five feet south of the building's edge, to accommodate the required setback, and then proceeded north for twenty feet.  Our concern is that the line north may need to be corrected to reflect the length of the building on the South Parcel and the 5-foot setback, for a total of twenty-five feet to the north.  This Court is not the proper forum to make this type of correction, if one is indeed required.  Instead we remand to the district court for the limited purpose of considering whether a correction is needed, and if so, to make the clerical correction.  *See* Wyo. R. Civ. P. 60(a) (LexisNexis 2013).

[¶57]   We affirm the district court's order, and we order a limited remand for the purpose described above.