# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 169

OCTOBER TERM, A.D. 2014

December 30, 2014

FERN CLARK and TRAVIS CLARK,

Appellants
(Petitioners),

v.

S-14-0170

THE RYAN PARK PROPERTY AND
HOMEOWNERS ASSOCIATION,

Appellee
(Respondent).

*Appeal from the District Court of Carbon County*
*The Honorable Wade E. Waldrip, Judge*

*Representing Appellants:*

Holli Austin-Belaski, Corthell and King, P.C., Laramie, Wyoming.

*Representing Appellee:*

Douglas W. Bailey, Bailey, Stock and Harmon, P.C., Cheyenne, Wyoming.

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE:** This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**BURKE, Chief Justice.**

[¶1]   Appellants, Fern and Travis Clark, brought an action against the Ryan Park Property and Homeowners Association seeking an order, pursuant to the Wyoming Nonprofit Corporation Act, requiring the Association to allow the Clarks to inspect and copy certain corporate records.  The district court entered the order, but denied the Clarks' request to recover costs and attorney's fees.  On appeal, the Clarks contend that the denial of attorney's fees and costs is contrary to the provisions of the Act.  We will affirm.

## ISSUE

[¶2]   The Clarks present this issue, which we reword slightly for the sake of clarification:

> Whether the district court erred by failing to adhere to the mandatory language of Wyo. Stat. Ann. § 17-19-1604 (LexisNexis 2011), when it ordered the Association to allow the Clarks to copy and inspect documents but denied the Clarks' request for attorney's fees and costs.

## FACTS

[¶3]   The Clarks, property owners in Ryan Park, Wyoming, and members of the Association, commenced an action in district court claiming that the Association had unlawfully denied their repeated requests to inspect and copy certain Association records.  The Clarks claimed that the Association was required by statute to keep and maintain these documents, that the Clarks had a statutory right to inspect and copy them, and that the Clarks were entitled under the statutes to recover the costs and attorney's fees they had incurred in bringing the action.  The Clarks moved for an order allowing them to inspect and copy the documents, and also sought an award of costs and attorney's fees.

[¶4]   At the beginning of the hearing on the Clarks' motion, counsel for the Association told the district court that the Association had "no problem" with the court entering an order requiring it to produce the records because the Association had already complied with the Clarks' request for documents.  Counsel for the Clarks indicated that the Clarks still wanted the district court to enter the order because they asserted they had not received all of the documents they had requested.  They also maintained that they were entitled to recover costs and attorney's fees.  The district court proceeded with the hearing.

[¶5]   Soon after the hearing, the district court entered its order granting the Clarks' motion.  The district court noted that the Association had stipulated to the entry of the

1

order, and stated that the court concurred with that stipulation. Accordingly, it ordered that, "[a]s the parties have agreed, and as has already been done, the [Association] shall make available for copying and inspection those records requested by the Clarks that are in existence and in its possession or in the possession of its agents and which can be reasonably obtained." The district court declined to order the Association to pay the Clarks' attorney's fees or costs. The Clarks appealed that part of the district court's decision.

## *STANDARD OF REVIEW*

[¶6] "Following a bench trial, we review the trial court's findings of fact for clear error, and its conclusions of law *de novo*." *Fox v. Wheeler Elec., Inc.*, 2007 WY 171, ¶ 9, 169 P.3d 875, 878 (Wyo. 2007) (citing *Pinther v. Ditzel*, 2007 WY 116, ¶ 3, 163 P.3d 816, 816 (Wyo. 2007)).

> [W]e assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law.

*Belden v. Thorkildsen*, 2007 WY 68, ¶ 11, 156 P.3d 320, 323 (Wyo. 2007) (quoting *Harber v. Jensen*, 2004 WY 104, ¶ 7, 97 P.3d 57, 60 (Wyo. 2004)). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id*.

## *DISCUSSION*

[¶7] Wyo. Stat. Ann. § 17-19-1601, part of the Wyoming Nonprofit Corporation Act, requires nonprofit corporations to retain specified documents, including meeting minutes, accounting information, and membership lists. Wyo. Stat. Ann. §§ 17-19-1602 and -1603 provide, with certain conditions, that a member of a nonprofit corporation is entitled to inspect and copy those records. Wyo. Stat. Ann. § 17-19-1604, the statute directly at issue in this case, provides a judicial remedy when a nonprofit corporation does not allow a member to inspect and copy such records:

> **§ 17-19-1604. Court-ordered inspection.**
>
> (a) If a corporation does not allow a member who complies with W.S. 17-19-1602(a) to inspect and copy any records required by that subsection to be available for inspection, the

2

district court in the county where the corporations' [sic] principal office, or, if none in this state, its registered office, is located may summarily order inspection and copying of the records demanded at the corporation's expense upon application of the member.

(b) If a corporation does not within a reasonable time allow a member to inspect and copy any other record, the member who complies with W.S. 17-19-1602(b) and (c) may apply to the district court in the county where the corporation's principal office, or, if none in this state, its registered office, is located for an order to permit inspection and copying of the records demanded. The court shall dispose of an application under this subsection on an expedited basis.

(c) If the court orders inspection and copying of the records demanded, it shall also order the corporation to pay the member's costs, including reasonable counsel fees, incurred to obtain the order **unless the corporation proves that it refused inspection in good faith because it had a reasonable basis for doubt about the right of the member to inspect the records demanded**.

(d) If the court orders inspection and copying of the records demanded, it may impose reasonable restrictions on the use or distribution of the records by the demanding member.

(Emphasis added.)

[¶8]　　In its order, the district court quoted subsection (c) of this statute, with the same added emphasis as in the quotation above.　It restated that this statute "requires the award of costs and fees . . . unless the corporation proves that it refused inspection in good faith because it had a reasonable basis for doubt about the right of the member to inspect the records demanded."　It then set forth these findings and conclusions:

> 7.　　At the April 23, 2014 hearing on this matter, this Court heard evidence regarding the Clarks' requests to obtain certain documents from the [Association], and the [Association's] attempts to satisfy those requests.　At the conclusion of the presentation of evidence, it was apparent to this Court that: (a) the [Association] has made reasonable efforts to meet the demands imposed upon it by the Clarks and (b) the [Association] had a reasonable basis for its doubt

3

of the Clark[s'] right to inspect certain documents, namely its concerns about the privacy interests of other individual members.

8. In this Court's experience, the [Association] has kept as good a set of records as most nonprofit, volunteer organizations and has done its best to respond to the Clarks' request, considering the fact that some of those records were in the possession of other individuals or entities and considering the [Association's] concerns about protecting its members['] privacy interests. In any event, this Court cannot conclude that the [Association] has acted in bad faith or that attorney's fees and costs are warranted.

[¶9]  The Clarks first contend that the district court's factual finding that the Association had made reasonable efforts to satisfy their requests is clearly erroneous. They claim that the Association "took nearly eight months to disclose, on a piecemeal basis, only partial responses" to their requests. The evidence, they contend, shows that they did not receive certain bank records until after the lawsuit had commenced.

[¶10]  At the hearing, the president of the Association, Donald Brinkman, testified that the Association did not have the requested bank statements, so he asked the Association's bank to provide copies. The statements produced by the bank did not include copies of cancelled checks or deposit slips, which the Clarks had requested. Mr. Brinkman asked the bank, and was told that it could provide copies of cancelled checks and deposit slips at an additional cost. After confirming that the Clarks were willing to pay the additional cost, he asked the bank for the documents. According to Mr. Brinkman, the bank had to retrieve some of the cancelled checks and deposit slips from records stored in California, and it "took a while" to get them. After the bank provided him with the documents, he gave them to the Clarks.

[¶11]  In applying our standard of review, we assume that the Association's evidence is true, and give the Association every reasonable inference that can reasonably be drawn from it. *Belden*, ¶ 11, 156 P.3d at 323. Mr. Brinkman provided a reasonable explanation for the delay, and his testimony supports the district court's finding that the Association made reasonable efforts to satisfy the Clarks' requests. We are not convinced that a mistake has been committed, and accordingly, we conclude that the district court's finding is not clearly erroneous.

[¶12]  The Clarks' second argument is that the district court applied an incorrect legal standard with regard to the Association's reluctance to provide the requested documents. The district court said it could not "conclude that the [Association] has acted in bad faith." The Clarks assert that the statute requires "good faith," and a lack of bad faith is

not sufficient. They contend that the Association did not meet the "good faith" standard, but instead refused to provide certain documents based on "an unsupported claim of privacy concerns."

[¶13] The documents at issue here were called "lien letters." They were sent to Association members requesting payment of past-due road assessment fees. At the hearing, Mr. Brinkman was asked why the Association was "hesitant" to turn these letters over to the Clarks. He responded:

> Everything that you read on the Privacy Act, everything I learned with the American Red Cross is you cannot divulge anything of a personal nature about anybody, that they are expected to have privacy on that issue, and, you know, you're liable if you do that. So, in turn, it will make the board liable if it discloses information that is not public record.

He further testified that he believed the letters were confidential, and that he was worried that they might be used to embarrass or harass the recipients. After the district court had entered a stipulated protective order covering the lien letters, however, the documents were given to the Clarks. Based on this evidence, the district court ruled that the Association "had a reasonable basis for its doubt of the Clark[s'] right to inspect certain documents, namely its concerns about the privacy interests of other individual members." It stated that it could not conclude that the Association had "acted in bad faith or that attorney's fees and costs are warranted."

[¶14] The Clarks are correct that the statute requires "good faith," while the court concluded that the Association had not acted in "bad faith." Strictly speaking, acting in good faith may not be precisely the same as not acting in bad faith. However, the order as a whole demonstrates that the district court was aware of, and applied, the correct standard.

[¶15] In a case in which the buyers of a house alleged the sellers had committed fraud, we noted that, in order to recover, the buyers had to prove the sellers "had to know of the defects they failed to disclose or misrepresented." The district court found instead that the sellers "were aware or reasonably should have been aware" of the defects. *Alexander v. Meduna*, 2002 WY 83, ¶ 34, 47 P.3d 206, 217 (Wyo. 2002). We said that,

> At first glance, the language appears to apply an incorrect standard. . . . In light of the record as a whole, we believe the language "were aware or reasonably should have been aware" was responsive to the sellers' implausible explanations. We conclude the trial court was endeavoring in a diplomatic manner to address the untruthful nature of the sellers'

testimony. The trial court unquestionably determined there was clear and convincing evidence of fraud because the sellers knew of the defects and purposely made misrepresentations regarding the property condition to induce the buyers, to their significant detriment, to make a purchase offer and enter into a purchase contract.

*Id.*

[¶16] Similarly, in the case before us now, the district court's order as a whole demonstrates that it applied the correct standard. The order quoted Wyo. Stat. Ann. § 17-19-1604(c), with emphasis on the language concerning good faith. It then restated the substance of the statute, again indicating that it required the award of attorney's fees and costs unless the Association proved it acted in good faith. Using language taken directly from the statutory standard, the court found that the Association "had a reasonable basis for its doubt of the Clark[s'] right to inspect certain documents, namely its concerns about the privacy interests of other individual members." Clearly, the district court was aware of the correct legal standard.

[¶17] It may have been more precise for the court to echo the statutory language. In context, however, its determination that the Association had not acted in bad faith is equivalent to a conclusion that the Association had acted in good faith. Reading the order as a whole leaves no doubt that the district court applied the correct legal standard.

[¶18] The district court's decision is affirmed.