# IN THE SUPREME COURT, STATE OF WYOMING

## 2019 WY 121

OCTOBER TERM, A.D. 2019

*December 4, 2019*

CINDY A. SHARPE; GEORGE A. LOGAN; and SYBILLE RANCH, LLC,

Appellants
(Defendants),

v.

JUDITH TIMCHULA, Trustee of the Judith Timchula Living Trust dated October 19, 2000,

Appellee
(Plaintiff),

and

JACK GARSON; ALETHA GARSON; JIMMY RAY GARSON; MOLLY JANE GARSON; SHAN BRIAN GARSON; and STRONG CREEK RANCH, INC.,

Appellees
(Defendants).

S-19-0034

*Appeal from the District Court of Albany County*
*The Honorable Tori R.A. Kricken, Judge*

*Representing Cindy A. Sharpe, George A. Logan, and Sybille Ranch, LLC:*
Mitchell H. Edwards of Nicholas & Tangeman, LLC, Laramie, Wyoming.

*Representing Judith Timchula, Trustee of the Judith Timchula Living Trust:*
M. Gregory Weisz of Pence and MacMillan, LLC, Cheyenne, Wyoming.

*Representing Strong Creek Ranch, Inc, Jack Garson, Aletha Garson, Jimmy Ray Garson, Molly Garson, and Shan Brian Garson:*

Donald P. Prehoda, Jr. and Aaron L. Tomisich of Prehoda, Edwards & Rampulla, LLC, Laramie, Wyoming. Argument by Mr. Prehoda.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN**, Justice.

[¶1]    Appellee, Judith Timchula, filed a complaint for establishment of a private road pursuant to Wyoming Statutes §§ 24-9-101 to -105.[1]  With limited modification, the district court adopted the viewers and appraisers'[2] recommendations regarding the route, conditions and use restrictions, and damages.  Appellants Cindy A. Sharpe, George A. Logan, and Sybille Ranch, LLC, appeal each ruling.[3]  We affirm in part, reverse in part, and remand for further proceedings on damages.

## ISSUES

[¶2]    Appellants raise three issues, which we rephrase as:

> I. Did the court err in selecting "the most reasonable and convenient route" for the private road?
>
> II. Did the court err when it did not impose use restrictions on the private road?
>
> III. Did the court err in its award of damages?

The Garsons focus on the route location and take no position on the remaining issues.  Ms. Timchula focuses on use restrictions.  She is willing to accept alternative routes and pay the damages ordered.

## FACTS

### The route

[¶3]    Ms. Timchula owns all of Section 21, Township 19 North, Range 72 West, 6th P.M., Albany County.  In May 2017, she filed a complaint in the district court pursuant to Wyoming Statutes §§ 24-9-101 to -105 claiming that her property is without legally enforceable access.  She proposed the court designate a route along an existing, unnamed, two-track road that is already subject to easements.  That route would have crossed Sections

---

[1] Ms. Timchula is the trustee of the Judith Timchula Living Trust dated October 19, 2000.  Appellees also include Strong Creek Ranch, Inc. and the Garsons: Jack, Aletha, Jimmy Ray, Molly, and Shan Brian.  We refer to these Appellees collectively as "the Garsons."
[2] We refer to the viewers and appraisers as "the viewers."
[3] We refer to these parties collectively as "Appellants," Cindy A. Sharpe as Ms. Sharpe, and George A. Logan as Mr. Logan.

1

15 and 16. Ms. Sharpe and Mr. Logan own the southern portion, and Sybille Ranch, Inc. owns the northern portion of Section 15.[4] The State of Wyoming owns Section 16.

[¶4]    Ms. Sharpe and Mr. Logan answered the complaint and proposed an alternate route across "Gates Creek Ranch Road," a two-track road crossing Section 22. Jimmy Ray, Molly Jane, and Shan Brian Garson own the northern half of Section 22, while Jack and Aletha Garson own the southern half. Various parties have easements across Gates Creek Ranch Road.

[¶5]    In January 2018, the court held a "necessity" hearing and determined that Ms. Timchula satisfied the statutory requirements for establishment of a private road and that access to her property was necessary. That determination is not at issue. After the hearing, Ms. Timchula amended her complaint to propose a modified route located exclusively on Section 15 to avoid crossing the State's land on Section 16.

[¶6]    With input from the parties, the court appointed three viewers—Jim Hastings, Shane Cross, and Don Willis—to assess the proposed routes and submit recommendations to the court regarding the most "reasonable and convenient" route for the private road, any conditions and restrictions that should be placed on the private road, and damages. After receiving instructions from the court, including an instruction that the viewers were not legally permitted to propose a route that connected to or traversed State land, the viewers met on the lands in question in August 2018, to view Ms. Timchula's property and the proposed access routes. All persons interested in the case were invited to attend the site visit.

[¶7]    The court provided the viewers the following map of the proposed routes with their instructions:[5]

---

[4] The land description for Ms. Sharpe and Mr. Logan's property is S1/2 N1/2, S1/2 of Section 15, Township 19 North, Range 72 West, 6th P.M. The land description for Sybille Ranch, LLC's property is N1/2 N1/2 of Section 15, Township 19 North, Range 72 West, 6th P.M.

[5] The route labeled "Timchula Proposed Rd" is the route that Ms. Timchula proposed in her complaint. The route labeled "Timchula Alternative Rd" is the route that Ms. Timchula proposed in her amended complaint to avoid crossing State land. The route labeled "Logan/Sybille Proposed Rd" is the route that Ms. Sharpe and Mr. Logan proposed in their answer and which we refer to as the "Section 22 Route" in this decision.

2



[¶8]   In their report, the viewers unanimously recommended the court designate a modified route—wherein the road would enter Ms. Sharpe and Mr. Logan's property at the same point proposed by Ms. Timchula.  Then the route would course southwest on an existing road to the boundary line between Sections 15 and 16, as Ms. Timchula proposed.  At that point, the route would turn south and course through Section 15, but would stop at the corner of Sections 15, 16, 21, and 22, unlike the route Ms. Timchula proposed.  The route would then enter the extreme northwest portion of the Garson property on Section 22 and turn immediately west into Ms. Timchula's property.  The viewers recommended this route because it provided the most convenient access to a public road and would require the least new construction and maintenance.

[¶9]   After a bench trial, the court determined that the Viewers' Route represented the "most reasonable and convenient" route for the private road.  The court explained that it evaluated the testimony of the viewers and the parties, some of which conflicted.  It found the viewers credible and more reliable than the interested landowners.  In the court's assessment, all of the routes could require construction and repair work or pose a risk of difficult travel at times due to weather and moisture conditions.  It found no evidence to warrant it rejecting or modifying the Viewers' Route.  It also found that route to be the most consistent with the private road statutes, which state that access "shall be along section and boundary lines whenever practical."

**Conditions and use restrictions**

[¶10]  In the district court proceedings, Appellants argued that Ms. Timchula should be restricted from using the private road for subdivision of her property and she should be

3

required to use the road for agricultural and residential purposes only. The viewers did not recommend these restrictions. At trial, they explained why. Mr. Hastings noted "that none of the other users of that right-of-way ha[d] the same type of restrictions." He and the other viewers felt such restrictions might diminish Ms. Timchula's property value without due process. Mr. Cross noted that Ms. Timchula requested "use of her property not be restricted to simply agriculture or residential" purposes. He expressed concern that the restrictions would limit Ms. Timchula's ability to use some of her land. Mr. Willis testified that he felt it was not up to them as viewers, or him as a lay person without any legal training, to take away Ms. Timchula's property rights.

[¶11]   The court declined to impose the requested restrictions for multiple reasons. First, the defendants did not offer "sufficient evidence as to why such conditions should be imposed" or which "cause[d] the Court to deem" it appropriate to impose such conditions and restrictions. Second, the defendants' property was not subject to such conditions and restrictions. Third, Ms. Sharpe and Mr. Logan's property and the Garson's property were "already subject to unconditional ingress/egress easements for the benefit of Antelope [Springs Land and Cattle Company], Rollston M. Frangopoulus, Trustee of the Gates Creek Trust, the John Roger Dodds Trust, and the Carol A. McKee Living Trust." Those easements did not contain the restrictions the defendants sought to impose on Ms. Timchula. Finally, "one or more" viewers testified that they considered the defendants' requests and found them inappropriate.

**Damages**

[¶12]   The district court instructed the viewers on how to assess damages. The instruction quoted the damages provision from the private road statutes and addressed how to assess the fair market value of property. The viewers recommended that Ms. Timchula pay $25 per rod[6] to Sybille Ranch, LLC, $25 per rod to Ms. Sharpe and Mr. Logan, and $500 total to Jimmy Ray, Molly Jane, and Shan Brian Garson. In their report, the viewers explained that to assess damages, they "evaluated 25 sales in Albany County and neighboring counties" and determined that the fair market value of the property over which the private road would cross was $1,000 per acre. They reviewed two easements which sold for $4.50[7] and $110 per rod and "found six easements for non-exclusive 30-foot private roads that sold for $25 per rod." "D[ue] to the wide range of values in nearby properties" and easements, they decided to rely on "arms['] length neg[otiations] by parties negotiating similar easements in [Albany] County" to determine damages.

[¶13]   At trial, Ms. Timchula's counsel expressed concern that the viewers may not have properly assessed damages and asked each viewer to explain how they had arrived at the

---

[6] A rod is 16 ½ feet in length.
[7] At trial, the parties discussed whether $4.50 was a typo and should have been $40.50 instead.

recommended damages. Their testimony generally established that the baseline amount that the State charges for an easement over its land is $25 per rod.

[¶14] Mr. Hastings explained that the damages recommendation was "a complex decision." They viewed many property sales. "[I]t seemed reasonable to actually look at what had been paid for similar types of easements and it was easiest from that standpoint to draw from the information" the State supplied to them. They considered the "before and after" test to establish damages but did not report such values. They could not agree on those values and ultimately felt that it was more appropriate to use the $25 per rod figure.

[¶15] Mr. Cross initially testified that the viewers used the "before and after" analysis, noting that the court's instructions identified the "before and after" analysis, as well as an arm's length negotiation instruction. When the viewers talked with the parties' counsel, one side told them they should use the "before and after" approach while the other said they should use both. Mr. Cross thought the "before and after" analysis was a component of the $25 per rod analysis.

[¶16] Mr. Willis testified that they reached the $25 per rod amount a couple of ways. When asked whether they utilized a "before and after" analysis, he responded that he "didn't know where you would come up with a figure for before and after on the pieces of the properties that were already -- had easements and traffic on them." He thought that damages could have been a little higher for the new road that they proposed along the west side of Section 16, but they could not find anything to justify a higher amount. The State easements in Albany County within the last 15 to 20 years "maxed out at" $25 per rod. He would not have changed anything about the damages award if the private road had been placed on Section 22.

[¶17] The court adopted the viewers' recommendation and ordered Ms. Timchula to pay $25 per rod to both Sybille Ranch, LLC, and Ms. Sharpe and Mr. Logan. It found that this "figure complie[d] with the damage methodology to be applied under the private road statute" and was "lawful and appropriate, especially given that the precise length of the road" would not be determined until Ms. Timchula provided a survey of the road to the court for approval. The court ordered Ms. Timchula to pay $500 total in damages to Jimmy Ray, Molly Jane, and Shan Brian Garson.

[¶18] Appellants timely appealed.

### STANDARD OF REVIEW

[¶19] Because the district court held a bench trial pursuant to Wyoming Statute § 24-9-103(a), we review its "findings of fact for clear error, and its conclusions of law *de novo*." *Clark v. Ryan Park Prop. & Homeowners Ass'n*, 2014 WY 169, ¶ 6, 340 P.3d 288, 289

(Wyo. 2014) (quoting *Fox v. Wheeler Elec., Inc.*, 2007 WY 171, ¶ 9, 169 P.3d 875, 878 (Wyo. 2007)).  We have stated the following regarding review of factual findings:

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict.  While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record.  Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence.  Findings of fact will not be set aside unless they are clearly erroneous.  A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Miner v. Jesse & Grace, LLC*, 2014 WY 17, ¶ 17, 317 P.3d 1124, 1131 (Wyo. 2014) (quoting *Claman v. Popp*, 2012 WY 92, ¶ 22, 279 P.3d 1003, 1012 (Wyo. 2012)).[8]

[¶20]  Additionally, "we assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it." *Harber v. Jensen*, 2004 WY 104, ¶ 7, 97 P.3d 57, 60 (Wyo. 2004) (quoting *Life Care Ctrs. of Am., Inc. v. Dexter*, 2003 WY 38, ¶ 7, 65 P.3d 385, 389 (Wyo. 2003)).  "We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law." *Id.* (quoting *Life Care Ctrs.*, ¶ 7, 65 P.3d at 389).  "Findings may not be set aside because we would have reached a different result." *Barlow Ranch, Ltd. P'ship v. Greencore Pipeline Co. LLC*, 2013 WY 34, ¶ 14, 301 P.3d 75, 82 (Wyo. 2013) (citing *Harber*, ¶ 7, 97 P.3d at 60).

### DISCUSSION

### I.    *The district court did not err when it designated the Viewers' Route.*

[¶21]  Appellants contend that the court failed to select the "most reasonable and convenient route" when it chose the Viewers' Route instead of the Section 22 Route.  They agree with the standard of review set forth above but highlight for our review those facts

---

[8] Ms. Timchula contends that we should afford greater deference to the court's factual findings because "[v]iewers may be akin to a court-appointed master" or "some sort of appointed special panel of witnesses." We decline to modify the standard of review on either basis.  Viewers are not akin to special masters. *Compare* Wyo. Stat. Ann. § 24-9-101(h)–(j) (addressing the role of viewers and appraisers), *with* W.R.C.P. 53 (outlining the role and authority of special masters).  Ms. Timchula cites no authority to support her contention that a viewer constitutes a distinct type of witness or that factual findings are entitled to greater deference on that basis.

6

pertaining to the impact and inconvenience the selected route will have on their land. Further, Appellants complain the order is "devoid of any specific factual findings," but fail to demonstrate clear error in the court's comparative findings, which expressly address the undisputed and conflicting evidence concerning the alternate routes. Having reviewed the entire evidence, we are not left with "the definite and firm conviction that a mistake has been committed" and decline to second guess the court's decision. *Miner*, ¶ 17, 317 P.3d at 1131 (citations omitted).

[¶22] "The private road statutes are the sole remedy for landlocked landowners to obtain access to their property." *Whaley v. Flitner Ltd. P'ship*, 2017 WY 59, ¶ 11, 395 P.3d 653, 658 (Wyo. 2017) (citation omitted). "Any person whose land has no outlet to, nor connection with a public road, may commence an action in district court in any county in which any part of the land is located for a private road leading from his land to some convenient public road." Wyo. Stat. Ann. § 24-9-101(a) (LexisNexis 2019). The viewers must "recommend" to the court, and the court must "select," "the most reasonable and convenient route, provided that access shall be along section and boundary lines whenever practical." Wyo. Stat. Ann. §§ 24-9-101(h), -103(a) (LexisNexis 2019). "The proposed road shall . . . be located so as to do the least possible damage to the lands through which the private road is located." Wyo. Stat. Ann. § 24-9-101(h).

[¶23] Contrary to Appellants' assertion, the court's order contains specific factual findings regarding the alternative routes for the private road:

> a. The testimony at trial showed that each of the possible private road access routes could require some amount of construction, installation of culverts and gravel/road base, and/or repair of the road in certain areas to allow year-round access because of: (i) boggy, wet areas, (ii) snow drifting issues, and (iii) obstacles such as boulders and/or terrain.

> b. There was conflicting testimony and evidence as to which of the access routes could require the most construction and repair work. [Ms.] Sharpe's testimony was that a road across Section 15 would require substantial work; [] Jack Garson's testimony was that a route across the Garson property would also require substantial work.

> c. There was conflicting testimony at trial as to whether the boggiest and wettest area was located on [Section 22], or the land in Section 16 owned by the State of Wyoming.

> d. The testimony at trial was that the [Section 22 access] route is often impassable or inaccessible in the winter due to drifts in

7

a deep draw that crosses Albany County Road 11. Additionally, the testimony at trial was that the beginning of the [Section 22] access route is located on a side hill, and as such it may be necessary to relocate that entire portion of the access road further north, close to the boundary between Section 22 and Section 27. While [v]iewer Don Willis testified that all of the lands in the area offered difficult (or even impossible) access at times during the winter due to drifting and blowing snow, the testimony at trial indicated that the [Viewers' Route] likely offers the most reasonable opportunity for dependable access.

e. There was conflicting testimony as to which route offered the quickest travel to and from Timchula's property in terms of driving time. However, the Viewer[s'] Report indicated that the starting point of [Section 15] (which is the same starting point as the [Viewers' Route]) was 5.5 miles from Wyoming Highway 34, while the starting point of [Section 22] was 8 miles from Highway 34. None of the testimony at trial contradicted this conclusion from the [v]iewers, and the Court finds such mileage difference to be a material difference in length.

f. The [v]iewers, including Shane Cross (the [v]iewer suggested to the Court as a [v]iewer by Sharpe & Logan and Sybille Ranch, LLC) all wrote and/or testified that all things considered, the [Viewers' Route] would require less or equal infill and culvert work, was less susceptible to snow drifts, and overall was the most reasonable and convenient access route.

[¶24]  Because Appellants do not directly challenge these findings, we need not catalogue the evidence that supports them. We instead turn our attention to Appellants' characterization of the purported drawbacks to the Viewers' Route and purported benefits to the Section 22 Route, and discuss the evidence that supports the district court's findings in the context of these summaries. Appellants assert that the court erred in selecting the Viewers' Route because:

> [t]he Viewers' Route is longer (8,294.3 feet); requires the construction of a substantial portion of new road involving infill and culverts (1,643.3 feet of new construction); requires significant upgrades and maintenance, particularly where the old road has been abandoned and is in natural reclamation; traverses through the Sharpes' existing homesite areas with

8

corrals, house trailers, a water well and latrine; requires removal of large boulders and rock formations; requires crossing of boggy wetlands; requires crossing springs which are the major source of surface water for the Sharpes and properties downstream; requires crossing of Sage Grouse habitat; requires the installation of two new gates and entryways at 90° angles into Timchula's property; and, enters Timchula's property in an area that is a natural drainage that is wet and boggy during parts of the year.

[¶25]  Appellants maintain that the court should have instead designated the Section 22 Route because it:

follows an existing road that has been in existence for many decades without the need to alter or move the road; follows an existing powerline; does not require traversing near any buildings or other structures; does not require building of a new road through boggy wetlands, source waters, or Sage Grouse habitat, or the removal of any boulders or rock formations; has at least four existing easements that utilize the entire length of the road; is the route that provides access to the properties surrounding Timchula's property, including being the access for those who have easements crossing Timchula's property; is the route used by Timchula's grazing lessee; is already named and identified by Albany County for addressing and emergency access; and has an existing entrance to Section 21 that is easily assessible, that does not require Timchula to enter her property in a natural drainage.

For these reasons, Appellants argue the court erred in selecting "the most reasonable and convenient route."  These reasons, however, are decidedly bent in their favor.

[¶26]  Appellants fail to address two of the most important considerations that led the viewers and, in turn, the district court to designate the Viewers' Route.  The court found it material that the Viewers' Route is 2.5 miles closer to Highway 34 than the Section 22 Route.  It took Mr. Cross "[b]etween five and ten" minutes to drive that extra distance at the speed limit.  The viewers found the distance to the highway a significant factor that weighed in favor of the Viewers' Route.

[¶27]  The district court also found that the testimony "indicated that the [Viewers' Route] likely offers the most reasonable opportunity for dependable access."  In support of that finding, the viewers' report found the Viewers' Route "less susceptible to drifting in the winter[.]"  Mr. Hastings testified that the existing entry to Section 15 was a "two track"

9

road on "the high ground or the hard ground"; while it was "windswept," "it looked like it blew clear." By contrast, the viewers found in their report that the Section 22 Route "crosses a sliver of land" that "passes below a ridge and is drifted tight with snow in winter." They noted that "a new road may need to be constructed along the Section 22 line for approximately 120 feet to provide reasonable year-round access." Mr. Hastings more definitively testified that the existing entry to Section 22 would have to be moved 120 feet north at the "bare minimum to get away from the worst rock pile." Although there was already a road across the Garson's property, he noted that there would be "a giant snowdrift" along that route in winter based on Mr. Willis' knowledge of the area, as well as what counsel and the parties told them on the day of the viewing, during phone conversations, and in emails.

[¶28] In addition, Appellants selectively emphasize various facts with respect to one route or the other. For example, they point out that the Section 22 Route follows an existing road, but the evidence presented to the district court shows that is also true of the Viewers' Route. Appellant notes that the Viewers' Route crosses Ms. Sharpe and Mr. Logan's future homesite. That fact, however, is not the direct result of the private road's location, as the evidence established that the existing road, already subject to another landowner's easement, presently crosses that future homesite. Appellants further assert that the Viewers' Route is longer than the Section 22 Route. As the district court noted, however, the evidence regarding route length and which route would take longer to travel was disputed. Appellants also make much about the boggy area along the Viewers' Route, yet the district court recognized that both routes would cross boggy areas, and Ms. Sharpe testified as to existing damage in that area along the Viewer's Route. Moreover, the viewers noted in their report that the existing two-track road across Section 15 crosses a spring and a wet slough, which would require construction in the form of culverts and infill (or other appropriate measures) for year-round access. But the viewers also noted that the Section 22 Route crosses through three wet spots that may require culverts and infill to cross. The viewers' testimony reinforced their comparative consideration of each route's attributes, and the district court took those comparisons into account. Appellants' spin on the evidence does little to establish error when we consider the record before the district court on-whole.

[¶29] Further, Appellants overstate the evidence regarding sage grouse habitat and springs. There was no evidence presented to the district court one way or the other regarding whether the Section 22 Route crosses sage grouse habitat or springs. The evidence that the Viewers' Route would impact sage grouse habitat was limited to Ms. Sharpe's rather vague testimony about a portion of the Viewers' Route that would require new road construction along the Section 16 boundary. Likewise, Ms. Sharpe briefly referenced that the area is a source for surface water but did not elaborate. To assign error on the basis of this testimony, we would have to disregard the standard of review, which requires we give due regard to the court's opportunity "to assess the credibility of the witnesses." *Barlow Ranch*, ¶ 14, 301 P.3d at 82 (citation omitted). The court found the

10

viewers' testimony more reliable than that of the interested landowners, including Ms. Sharpe. The viewers found, and the district court apparently did not disagree, that the Viewers' Route "would cause the least damage" and require "the least maintenance" of the alternative routes.

[¶30] We simply cannot agree with Appellants that "[t]here is little doubt that the Viewers' Route . . . does the most damage to the lands through which the route would cross." Moreover, we disagree that this case is analogous to *Closs v. Schell*. In *Closs v. Schell*, we stated that "[a] proposed route that requires the building of an entirely new road that does not connect to any other existing roadway or easement is neither convenient nor reasonable." 2006 WY 95, ¶ 26, 139 P.3d 435, 444 (Wyo. 2006) (citing *Mayland v. Flitner*, 2001 WY 69, ¶ 22, 28 P.3d 838, 847 (Wyo. 2001)). Appellants argue that if building a new road that would cross boggy areas and require tree removal was neither reasonable nor convenient in *Closs*, then building a road that requires removal of large boulders and rock formations and crossing boggy areas with springs is not reasonable here. What Appellants fail to address is that, unlike *Closs*, the district court here found that **both** routes "could require some amount of construction, installation of culverts and gravel/road base, and/or repair of the road in certain areas to allow year-round access because of: (i) boggy, wet areas, (ii) snow drifting issues, and (iii) obstacles such as boulders and/or terrain."

[¶31] As Mr. Willis testified, the Section 22 Route "was doable" but "it came in second." Weighing the evidence and credibility, the district court selected the Viewers' Route as the most reasonable and convenient route. We have declined to second guess designation of one route over another under similar circumstances. *Whaley*, ¶ 40, 395 P.3d at 665 (declining to reverse where the choice between two roads was a close call and it would have been entirely possible for the Board of County Commissioners to conclude that the "Upper Black Mountain Road was the most reasonable and convenient route" instead of the route the Appellants designated); *In re Crago*, 2007 WY 158, ¶ 18, 168 P.3d 845, 855 (Wyo. 2007) (declining to second guess the Board of County Commissioners' choice of one route over the other where the record reflected "that the Board (and the viewers and appraisers) had to make a difficult decision between two roads. One eminently viable and the other just barely viable.").[9] The record supports the route the district court designated in this case. We therefore may not set aside the court's findings, reweigh the evidence, or substitute our judgment. *Miner*, ¶ 17, 317 P.3d at 1131; *Barlow Ranch*, ¶ 14, 301 P.3d at 82; *Harber*, ¶ 7, 97 P.3d at 60.[10]

---

[9] In 2013, the Legislature amended the private road statutes to vest authority to adjudicate private road actions in the district courts instead of the Board of County Commissioners. 2013 Wyoming Laws Ch. 99. At the same time, the Legislature expressed its intent "that the precedents established with respect to the creation of private roads prior to the July 1, 2013 amendments to this article should continue to be followed to the extent they are not inconsistent with the provisions of this article." Wyo. Stat. Ann. § 24-9-105(b) (LexisNexis 2019).

[10] Appellants' remaining arguments pertain to matters that were either immaterial to the district court's decision or squarely within its province to weigh evidence and determine credibility. Mr. Hastings'

## II. *The district court did not err when it declined to impose proposed use restrictions.*

[¶32] The private road statutes authorize, but do not require, the viewers to "recommend specific conditions that the court place on the road, including provisions for maintenance and limitations on the amount and type of use." Wyo. Stat. Ann. § 24-9-101(h). The district court must "specify[]" in its final order any conditions it may impose. Wyo. Stat. Ann. § 24-9-103(a). Appellants contend that three of the court's factual findings in support of its decision not to impose the use restrictions they proposed are clearly erroneous. We find no clear error.

[¶33] First, Appellants challenge the court's finding that Ms. Sharpe and Mr. Logan's property, as well as the Garson's property, "are already subject to unconditional ingress/egress easements" for the benefit of various landowners. Appellants misconstrue the court's first finding when they suggest that this finding is erroneous because none of the identified landowners have access over the portion of the private road that will require new construction, or because each of the identified landowners does not have access over **both** Ms. Sharpe and Mr. Logan's and the Garson's property. Their argument based on this misconception therefore fails. And while Appellants are correct that, as a practical matter, Antelope Springs Land and Cattle Company may limit use of its easement over Ms. Sharpe and Mr. Logan's property because its easement over adjacent State property is restricted or because the width of its easement over Section 15 is limited to thirty feet,[11] that practical limitation does not constitute a legal restriction on use of its easement over Ms. Sharpe and Mr. Logan's property. Nor does that practical limitation support imposing a legal restriction on Ms. Timchula's private road use.

[¶34] Next, Appellants contend the court erred when it found "that one or more of the [v]iewers testified they did consider the Defendants' requests, and found them to be inappropriate." Appellants fail to account for all three viewers' testimony when they suggest that the viewers merely "felt it was inappropriate for them to undertake consideration of such restrictions as lay persons." Considering the viewers' testimony as a whole, it is obvious they were collectively concerned about the inequity of imposing restrictions on Ms. Timchula that the other easement holders did not bear, and the

---

testimony that "if [he] were looking at the alternative, [he'd] go to the State of Wyoming" was irrelevant to the court's determination, and in no way suggested that the viewers failed to follow the instructions that they could not consider any route that crossed state land. The district court's finding that Ms. Timchula preferred the Section 22 Route because her relationship with Ms. Sharpe and Mr. Logan was strained reconciled Ms. Timchula's stated preference for the Viewers' Route in her trial summary with her stated preference for the Section 22 Route at trial. Even from the cold record, we can discern that there was tension between the parties over the private road's location. The district court, which observed the trial testimony and was familiar with the parties, was in the best position to assess Ms. Timchula's credibility with respect to her preference and we give due regard to its assessment. *Miner*, ¶ 17, 317 P.3d at 1131.

[11] The width of Ms. Timchula's private road through Section 15 is likewise limited to thirty feet, consistent with the private road statutes. Wyo. Stat. Ann. § 24-9-101(h)(LexisNexis 2019) (specifying that "[t]he proposed road shall not exceed thirty (30) feet in width").

12

possibility that the proposed restrictions would unjustly diminish Ms. Timchula's property value.

[¶35]   Finally, Appellants argue that the court's finding that the "Defendants presented no evidence that causes the Court to deem the imposition of such conditions and restrictions to be appropriate" is clearly erroneous because it ignored evidence that the State easements on which damages were based contained restrictions.  Appellants seem to have things backwards, as consideration of the scope of use of a private road should precede the determination of damages, not vice versa.  Most important, however, the court did not have to ignore such evidence to find the proposed restrictions inappropriate under the circumstances, and it had ample evidence in the viewers' report and witness testimony to support its findings on use restrictions. [12]

### III.   *The district court erred in its award of damages.*

[¶36]   We agree with Appellants that the district court erred in its award of damages, but we reach that conclusion for a different reason.  The private road statutes originally mentioned damages but "provided no guidance on how" to determine damages.  *Barlow Ranch*, ¶ 38, 301 P.3d at 88.  "In *Lindt v. Murray*, 895 P.2d 459 (Wyo. 1995), this Court held the measure of damages for taking a private road was the difference in value of the entire parcel before and the remaining land after the taking." *Id.*  In 2000, the legislature revised the statutes to "incorporate the before and after test," "consistent with the holding in *Lindt.*"  *Barlow Ranch*, ¶ 38, 301 P.3d at 88; *Mayland*, ¶ 36, 28 P.3d at 851 (citing Wyo. Stat. Ann. § 24-9-101(j) (LEXIS 2000)). [13]

---

[12] Appellants' assertion that the court should have imposed restrictions based on Ms. Timchula's testimony about how she has historically used her property or how she intends to use it in the future, lacks cogent argument or citation to pertinent authority and for those reasons we do not address it.  *See Mitchell v. Preston*, 2019 WY 41, ¶ 33, 439 P.3d 718, 725 (Wyo. 2019).

[13] A "before and after" appraisal should be conducted as follows:

> [V]iewers and appraisers must: first, determine the value of the property over which the road crosses before the private road is established; second, determine the value of the property over which the road crosses after the private road is established; and third, subtract the "after" value from the "before" value, which equals the damages due the owners of land over which the road crosses.  In applying this formula, the viewers and appraisers are to determine the "before" and "after" value only of those lands over which the private road crosses; not . . . the "before" and "after" value of all surrounding lands affected by the proposed road.

*Mayland*, ¶ 35, 28 P.3d at 850–51 (citation omitted).  A "'before and after' appraisal is a phrase of art in the appraisal business" which incorporates many factors.  *Crago*, ¶ 20, 168 P.3d at 855–56 (citing 4 *Nichols on Eminent Domain*, § 13.0117; and 32 Am.Jur. Proof of Facts 3d 405, *Inverse Condemnation by Physical Invasion*, § 17).

[¶37] In 2013, the legislature amended, but did not substantively change, the damages provision. *Cf.* Wyo. Stat. Ann. § 24-9-101(j) (LexisNexis 2000), *with* Wyo. Stat. Ann. § 24-9-101(j) (Lexis Nexis 2019). It continues to incorporate the "before and after" test:

> (j) In determining any damages to be suffered by a defendant, the viewers and appraisers shall appraise the value of the property affected by the road before and after the road is in place. Damages also may include reasonable compensation for any improvements on the lands over which any private road is to be granted which were not paid for and will be used by the plaintiff.

Wyo. Stat. Ann. § 24-9-101(j).

[¶38] Wyoming Statute § 24-9-101(j) is unambiguous. Its plain language sets forth one, and only one, method by which damages may be calculated—a "before and after" appraisal—and then allows damages to include reasonable compensation for any improvements on the lands. The statute's use of the word "shall" means viewers and appraisers must use this method to calculate damages. *Stutzman v. Office of Wyo. State Eng'r*, 2006 WY 30, ¶ 17, 130 P.3d 470, 475 (Wyo. 2006).

[¶39] Appellants dispute that the damages calculation in a private road action is so limited, arguing that the appraisal methods identified in the definition of "fair market value" under Wyoming's eminent domain law, Wyoming Statute § 1-26-702(a), also apply. To support the argument that the price paid for comparable easements may be considered in calculating damages in a private road action, Appellants rely on our statement in *Mayland*, ¶ 39, 28 P.3d at 852, that the formula for computing "due" and "just" damages under the private road statutes is the same as the formula for computing compensation for a partial taking under the eminent domain statutes. Appellants also rely on our conclusion in *Barlow Ranch*, ¶¶ 46–49, 301 P.3d at 90–91, that the price paid for comparable easements may be considered in calculating compensation for a partial taking (i.e., an easement). Appellants' reading of *Mayland* and *Barlow Ranch* is flawed.

[¶40] In *Barlow Ranch*, we explained that although *Mayland* articulated that the measure of compensation under the private road statute and the partial takings statute was "essentially the same," it did so in the narrow context of the "before and after" approach the appraisers took in *Mayland*. *Barlow Ranch*, ¶¶ 39–41, 301 P.3d at 88–89. Accordingly, *Mayland* did not limit the methods by which compensation may be calculated for a partial taking under the eminent domain statutes.[14] *Id.* ¶ 44, 301 P.3d at 89. We further addressed

---

[14] The eminent domain statute on compensation for takings states:

how *Mayland*'s discussion of the similar jurisprudence governing damages in private road and eminent domain cases, including "severance damages" and the constitutional proviso of "due" and "just" compensation, was *dicta*. *Id.* ¶ 42, 301 P.3d at 89. *Mayland* suggested only that "the measure of compensation under both enactments is the difference between the value of the property before the taking and the value of the property remaining after the taking." *Id.* ¶ 41, 301 P.3d at 89. We concluded that the eminent domain statute clearly authorized appraisal methods beyond a "before and after" method.[15] *Id.* ¶ 44, 301 P.3d at

---

> (a) Except as provided in subsection (b) of this section, the measure of compensation for a taking of property is its fair market value determined under W.S. 1-26-704 as of the date of valuation.
>
> (b) If there is a partial taking of property, the measure of compensation is the greater of the value of the property rights taken or the amount by which the fair market value of the entire property immediately before the taking exceeds the fair market value of the remainder immediately after the taking.

Wyo. Stat. Ann. § 1-26-702 (LexisNexis 2019).

[15] Wyoming Statute § 1-26-704(a) addresses how to determine the fair market value of property and further authorizes various appraisal methods:

> (a) Except as provided in subsection (b) of this section:
>
> > (i) The fair market value of property for which there is a relevant market is the price which would be agreed to by an informed seller who is willing but not obligated to sell, and an informed buyer who is willing but not obligated to buy;
> >
> > (ii) The fair market value of property for which there is no relevant market is its value as determined by any method of valuation that is just and equitable;
> >
> > (iii) The determination of fair market value shall use generally accepted appraisal techniques and may include:
> >
> > > (A) The value determined by appraisal of the property performed by a certified appraiser;
> > >
> > > (B) The price paid for other comparable easements or leases of comparable type, size and location on the same or similar property;
> > >
> > > (C) Values paid for transactions of comparable type, size and location by other public or private entities in arms length transactions for comparable transactions on the same or similar property.

Wyo. Stat. Ann. § 1-26-704(a) (LexisNexis 2019).

90.  In discussing the history of the eminent domain statutes, we distinguished private road actions from eminent domain proceedings, noting that the law on compensation in eminent domain cases developed differently than the law on damages in private road actions.  *See id.* ¶¶ 38, 45, 301 P.3d at 88–90.

[¶41]  The record reflects that the viewers considered before and after values, but they could not reach a consensus and did not report any such values.  They had difficulty appraising property already burdened by easements and found it more reasonable to consider what other landowners had paid for easements.[16]  The viewers ultimately recommended that Ms. Timchula pay $25 per rod in damages to Ms. Sharpe and Mr. Logan and Sybille Ranch, LLC, based on the baseline that the State charges for an easement.  It is unclear how they determined that Ms. Timchula should pay $500 to the Garsons, but the court adopted their recommendation without modification.

[¶42]  Because damages were not calculated in accordance with statute, we reverse the damages award and remand for the district court to reassemble the viewers, or if necessary, appoint new viewers and appraisers.  The court should instruct the viewers and appraisers to determine and separately report the before and after values of each separately owned parcel of affected land in accordance with Wyoming Statute § 24-9-101(j).  The court should further instruct the viewers and appraisers to explain the factors that affected each reported before and after value.  *Mayland*, ¶ 44, 28 P.3d at 853.

## *CONCLUSION*

[¶43]  The district court did not err when it designated the Viewers' Route as "the most reasonable and convenient" for Ms. Timchula's private road.  It also did not err when it declined to limit use of the private road to a single-family dwelling and agricultural purposes, and to prohibit Ms. Timchula from using it for subdivision.  We affirm the court's order in those respects.  However, because the court erred in its award of damages, we reverse the damages award and remand for further proceedings consistent with this decision.

---

[16] We recognize the potential problem that a private road "may not reduce the value of the remaining property" under a "before and after" appraisal technique.  *See Barlow Ranch*, ¶ 24, 301 P.3d at 84.  However, any expansion of the method by which damages may be calculated in a private road action must come from the legislature, not this Court.